543 A.2d 128

**Theodore GROFF and Denise Groff, h/w, Appellants,**

v.

**PETE KINGSLEY BUILDING, INC.**

v.

**H. Glenn ESBENSHADE and Leslie L. Witmer, t/a G & L Developers, Realty Trade and Equity Company of Lancaster, Pennsylvania, Warren Weaber, Inc., J.K. Towers and the Township of East Hemfield**

v.

**B.R. KREIDER & SON, INC., Appellees.**

Superior Court of Pennsylvania.

Submitted March 8, 1988.

Filed May 25, 1988.

378

Paul W. Grego, Lancaster, for appellants.

John L. Sampson, Lancaster, for Pete Kingsley, appellee.

James R. Adams, Lancaster, for H. Glenn Esbenshade and Witmer, appellees.

Jefferson C. Crosby, Lancaster, for Realty Trade and Warren Weaber, appellees.

James H. Thomas, Lancaster, for J.K. Towers and East Hempfield Tp., appellees.

George H. Eager, Assistant District Attorney, Lancaster, for B.R. Kreider, appellees.

Before ROWLEY, WIEAND and MONTEMURO, JJ.

MONTEMURO, Judge:

This is an appeal from an order of the Court of Common Pleas of Lancaster County dismissing appellant's amended complaint on appellee's motion for judgment on the pleadings.

Appellants, Theodore and Denise Groff, purchased a tract of land in Lancaster County through the agent of a land developer. Thereafter, in October of 1982, appellants contracted in writing with appellee, Pete Kingsley Builder, Inc., to construct a new house on the tract of land. Appellants took possession of the completed house on February 1, 1983.

On September 3, 1986, appellants instituted suit against the appellee, Pete Kingsley Builder, Inc. Appellants contended in their Complaint that appellee had negligently constructed their house "...in complete contravention of the plans and authorizations from the Plaintiffs, said construction also below the standards within the building industry ..." R.R. at 3a. Appellants listed the following structural problems existing in their completed house which they claimed were caused by appellee's negligent construction:

A. The outside basement wall has developed large cracks;

B. The basement floor has developed large cracks;

C. The front stoop/door area is completely misaligned, resulting in it being almost impossible to open and close the front door;

D. Larger than normally expected drywall cracks have developed throughout the house;

E. The french doors are completely misaligned, thereby making it almost impossible to open and close them ...

*Id.* Appellants also included a breach of contract claim in their Complaint, averring that the "actions and/or omissions by the Defendant caused an utter breach of the Contract ..." R.R. at 4a. Appellants attached to their Complaint a document which they identified as their written Contract with appellee. This document consists of a five-

page "Specifications and Description of Material for Construction" and a three-page floor plan of the proposed dwelling. Neither the specifications nor the floor plan contains any terms (such as price, time schedule, or possible warranties) concerning the parties' agreement beyond a listing of the dimensions of the proposed house and the types of construction material which were to be used.

Appellee filed an answer to the Complaint on November 10, 1986, wherein the appellee denied that it was negligent in building appellants' house and asserted that any structural problems are due to a cause other than appellee's workmanship. Appellee contended that it had complied with all of its contractual obligations.[1] By way of New Matter, appellee averred that the developer of the appellant's building lot had placed improper fill on the lot which resulted in a tract of land not suitable to support a home. Answer of Appellee, 11/10/86 at 4. Appellee further averred that it had no reason to know that the subsurface condition of appellants' lot was unsuitable to support the house which it contracted to build for appellants and that the appellants had acted negligently in failing to determine the subsurface condition of their lot prior to entering into a construction contract. *Id.* at 5. Finally, the appellee's New Matter contains the following allegations:

22. Pursuant to the terms of the parties' contract, Defendant provided protection against construction defects to Plaintiffs through the Home Owners Warranty Program as a result of which the Home Owners Warranty Corporation issued insurance/warranty documents to Plaintiffs.

1. In its Answer, appellee admitted that it had entered into a written contract with appellants. Appellee denied, however, that the document which appellants had attached to their complaint was a copy of this contract. Answer of Appellee, 11/10/86 at 1. Appellee alleged that the document attached to appellants' complaint is merely "a copy of the specifications for the house." *Id.* The record before us does not contain any document which appears to be a copy of the written construction contract which these parties apparently executed sometime in September or October of 1981.

26. Defendant is not liable for damages resulting from the alleged drywall cracks by reason of the exclusions set forth in Paragraph 15F of the parties' contract.

27. Defendant is not liable for damages resulting from the alleged concrete cracks by reason of the exclusions set forth in Paragraph 15J of the parties' contract.

*Id.* at 6. We have thoroughly reviewed the record before us and we note that it does not contain a copy of the contractual provisions described by the appellee in its above quoted New Matter. *See* n. 1., *infra.*

In February of 1987, appellee joined additional defendants, among them the developer of the appellants' building lot. On June 10, 1987, the appellee filed a motion for judgment on the pleadings. In this motion, appellee contended, *inter alia,* that the statute of limitations had run with respect to appellants' claim that appellee had been negligent in building the house. In reference to appellants' breach of contract claim, appellee argued that the document attached to appellants' Complaint "...contains no warranties, expressed or implied, and no covenants or promises of any kind. Plaintiffs have therefore not alleged a cause of action based on breach of contract ..." Appellee's Brief in Support of Motion for Judgment on the Pleadings, 6/10/87 at 9.

Appellants responded to the motion for judgment on the pleadings by filing an amended complaint. The amended complaint contained the same factual averments as appellants' original complaint, but contained only a claim for breach of contract as follows: "This defective construction by the Defendant caused an utter breach of the contract, and of the warranty of habitability implied therein ..." R.R. at 38a. After the filing of the amended complaint, appellee continued to pursue its motion for a judgment on the pleadings, contending that appellants' breach of contract claim must rest solely upon an implied contractual theory because "...Plaintiffs were unable to point to any terms of the *contract pleaded* which were violated by Defendant." Appellee's Reply Brief in Support of Motion

for Judgment on the Pleadings, 8/10/87 at 3 (emphasis added). Appellee argued that appellants had failed to state a cause of action for breach of an implied warranty of habitability on the grounds that this implied contractual warranty has only been recognized in cases where the builder of a structure is also the seller or vendor of the building lot. The trial court entered the following Order, which is the subject of the instant appeal:

AND NOW, August 18, 1987, upon consideration of Defendant's, Pete Kingsley Builder, Inc., motion for judgment on the pleadings and the legal briefs filed in support and opposition by the concerned parties, it is Ordered that such motion is granted since under the rationale of *Elderkin v. Gaster*, 447 Pa. 118, 288 A.2d 771 (1972), as reconfirmed by *Tyrus [Tyus] v. Resta*, 328 Pa.Super.Ct. 11, 476 A.2d 427 (1984), the moving Defendant in the present case is not a builder-vendor and thereby not responsible for the implied warranties of habitability and reasonable workmanship.

Consequently, judgment is entered in favor of Pete Kingsley Builder, Inc. and against Plaintiffs. (footnote omitted)

R.R. at 62a.

 A trial court, in granting judgment on the pleadings, must confine its consideration to the pleadings and relevant documents properly before it. *Del Quadro v. City of Philadelphia*, 293 Pa.Super. 173, 437 A.2d 1262 (1981). Judgment on the pleadings is appropriate only when no material facts are in dispute. *Vogel v. Berkley*, 354 Pa.Super. 291, 511 A.2d 878 (1986). "In reviewing the court's decision, we must determine if the action of the court was based on a clear error of law or whether there were facts disclosed by the pleading which should properly go to the jury. The decision will be affirmed only in cases which are clear and free from doubt." *Id.*, 354 Pa.Superior Ct. at 296, 511 A.2d at 880 (citations omitted). This is a case which is certainly not free from doubt.

■ The appellants and the appellee, by way of their pleadings, agree that they did execute a written construction contract. This contract was apparently never attached to any of the pleadings filed by either the appellants or the appellee. As a result, the trial court was apprised of the contract's existence but not of its contents. Under these circumstances, we find that the trial court erred in entering a judgment on the pleadings in favor of the appellee as to the claim that the appellee had breached the terms of this construction contract. Our review of the allegations contained in the appellee's Answer, filed November 10, 1986, convinces us that the construction contract, as executed between these parties, may contain express warranties concerning the quality of appellee's workmanship. Although we recognize that appellants have already amended their complaint once, we are "mindful ...that a complaint should be dismissed only in clear cases, and that leave to amend should be granted when there is a possible theory under which the complaint might be self-sustaining ..." *Harkins v. Zamichieli,* 266 Pa.Super. 401, 410, 405 A.2d 495, 500 (1979). In the case presently before us, we have no way of knowing whether the construction contract was in the exclusive possession of the appellee, or whether the appellants also had a copy of the contract. Appellants, upon remand, should be given an opportunity to amend their complaint to state a cause of action, if they can, for breach of the express terms of the construction contract.

We also find error in the entry of judgment on the pleadings in favor of the appellee as to the alleged breach of the implied warranty of habitability.

In *Elderkin v. Gaster,* 447 Pa. 118, 288 A.2d 771 (1972), our supreme court addressed for the first time the implied warranty of habitability in the area of residential construction contracts. The appellants in *Elderkin* had entered into a construction contract to purchase a lot from the appellee. This contract also provided that the appellee would construct a house on the lot. After the appellants had taken possession of the house, they discovered that the well water

supply for the house was unfit for human consumption. The issue facing our supreme court in *Elderkin* was whether any contractual warranties are implied when a builder sells a new house and a lot to a lay purchaser. Initially, the supreme court noted that the existence of "[a] series of American decisions holding that the sale by its builder-vendor of a new home in the process of construction is accompanied by implied warranties of workmanship construction and habitability." *Id.*, 447 Pa. at 125, 288 A.2d at 775. The court recognized the following as the "thesis of all of these decisions":

> "[T]he whole object, as both parties know, is that there shall be erected a house in which the intended purchaser shall come to live. It is the very nature and essence of the transaction between the parties that he will have a house put up there which is fit for him to come into as a dwelling house. It is plain that in those circumstances there is an implication of law that the house shall be reasonably fit for the purpose for which it is required, that is for human dwelling."

*Id.*, 447 Pa. at 125–126, 288 A.2d at 775 (citation omitted). The *Elderkin* court stated that "the warranties appear to apply whether the homes are purchased prior to construction, during construction, or after the dwelling has been constructed but not yet occupied." *Id.*, 447 Pa. at 126–127, 288 A.2d at 776.

The *Elderkin* court held that the appellee, who had purchased land and built a home thereon for the purpose of sale to the appellants, impliedly warranted that "...the house he has built and is selling is constructed in a reasonably workmanlike manner and that it is fit for the purpose intended—habitation." *Id.*, 447 Pa. at 128, 288 A.2d at 777. In so holding, the court recognized:

> ...the law will imply a warranty of fitness for the purpose intended when a buyer has reason to rely upon and does rely upon the judgment of the seller who manufactures the product. We have concluded that one who purchases a development home conforms to this standard;

he justifiably relies on the skill of the developer that the house will be a suitable living unit. Not only does a housing developer hold himself out as having the necessary expertise with which to produce an adequate dwelling, but he has by far the better opportunity to examine the suitability of the home site and to determine what measures should be taken to provide a home fit for habitation. As between the builder-vender and the vendee, the position of the former, even though he exercises reasonable care, dictates that he bear the risk that a home which he has built will be functional and habitable in accordance with contemporary community standards . . .

*Id.* The *Elderkin* court concluded that the appellee had breached the implied warranty of habitability by failing to provide the home with drinkable water.

██ We hold that in instant case, the appellee, upon executing the construction contract with appellants, impliedly warranted that appellants' house would be constructed in a reasonably workmanlike manner and it would be fit for habitation as a residential dwelling. We believe this is both a logical and fair application of the *Elderkin* decision. Our decision rests predominantly upon the underlying rationale of the *Elderkin* opinion, but we are also guided by case law from other jurisdictions.

In *McDonald v. Mianecki,* 79 N.J. 275, 398 A.2d 1283 (1979), the Supreme Court of New Jersey examined in detail the evolvement and the rationale of the doctrine of the implied warranty of habitability in the area of new home construction. Without exception, this exhaustive discussion, which parallels the discussion of our supreme court in *Elderkin,* applies with equal weight whether a layperson contracts to purchase a new house and accompanying lot from the builder, or whether a layperson contracts to have a new house constructed upon land which the layperson already owns. A contract to purchase a new home or to have a new home constructed is "...not an everyday transaction for the average family; * * * in many instances [it] is the

most important transaction of a lifetime." *Id.* at 288, 398 A.2d at 1289 (citations omitted). In such contracts, it is essential to recognize that the contracting parties do not bargain as two equals. On the contrary, whether a house is completed or in the process of being built, most members of the general public lack the knowledge and expertise in construction practices to adequately inspect and supervise the builder's workmanship. *See Petersen v. Hubschman Construction Co., Inc.,* 76 Ill.2d 31, 40, 27 Ill.Dec. 746, 750, 389 N.E.2d 1154, 1158 (1979); *Moxley v. Laramie Builders, Inc.,* 600 P.2d 733, 735 n. 2 (Wyo.1979). We recognize that "modern construction is complex and regulated by many governmental codes, and that homebuyers are generally not skilled or knowledgeable in construction, plumbing, or electrical requirements and practices ..." *Richards v. Powercraft Homes, Inc.,* 139 Ariz. 242, 246, 678 P.2d 427, 431 (*en banc*) (1984). "Furthermore, most defects are undetectable to even the most observant layman and the expense of expert advice is often prohibitive." *McDonald, supra,* 79 N.J. at 288, 398 A.2d at 1289.

Thus, the consumer in the area of new house construction must rely in great part upon the expertise of the builder who holds himself out as competent to construct the consumer's home. Although a layperson purchasing a new home or contracting for the construction of one may attempt to protect himself from faulty construction with express contract provisions, it has been recognized that, in the area of residential construction contracts, "standard form contracts are generally utilized and '[e]xpress warranties are rarely given, expensive, and impractical for most buyers to negotiate.'" *Id.* at ——, 398 A.2d at 1290 (citation omitted). Builders enjoy a superior bargaining position when contracting with laypersons interested in securing their services or buying their finished construction. As a result, the law implies a warranty of habitability to protect lay purchasers who enter the marketplace in order to obtain a new house from a builder. Otherwise, the public would remain at the professional builder's mercy.

The existence of the implied warranty of habitability does not place a surprise burden upon builders. Rather, it serves to achieve the reasonable intent of the parties who contract for the construction of a residential structure. It is the "...implicit understanding of the parties to a construction contract ...that the agreed price is tendered as consideration for a home that is reasonably fit for the purposes for which it was built—i.e., habitation." *Id.* at 293, 398 A.2d at 1292. The builder knows he is building a structure which will be used as a home. Neither does the implied warranty of habitability place an unfair or unreasonable burden upon builders of new residential construction. The professional builder is expected to have the skill and expertise to know how to guard against potential structural problems. Moreover, the builder is in the best position to prevent structural defects. Finally, this jurisdiction has recognized that builders may protect themselves from liability for breach of implied warranties by including express disclaimers of such warranties in their construction contracts. *Tyus v. Resta,* 328 Pa.Super. 11, 476 A.2d 427 (1984) (Implied warranties of habitability and reasonable workmanship in contracts whereby a builder sells a newly constructed home may be limited or disclaimed by clear and unambiguous language in a written contract between the builder and the home purchaser, with contractual language purportedly creating an express restriction or exclusion of an implied warranty being strictly construed against the builder.) The recognition of the implied warranty of habitability in residential construction contracts benefits the entire building industry because it serves to discourage "the unscrupulous, fly-by-night, or unskilled builder and to 'discourage much of the sloppy and jerry building that has become perceptible over the years.'" *Capra v. Smith,* 372 So.2d 321, 323 (Ala.1979) (citations omitted).

When presented with the issue, other jurisdictions have recognized that a builder, when contracting with a landowner to construct a residential home on the owner's land, impliedly warrants that the structure will be erected in a workmanlike manner. *See, e.g., Henggeler v. Jindra,* 191

Neb. 317, 214 N.W.2d 925 (1974); *Robertson Lumber Company v. Stephen Farmers Cooperative Elevator Company*, 274 Minn. 17, 143 N.W.2d 622 (1966); *Holmes v. Worthey*, 159 Ga.App. 262, 282 S.E.2d 919 (1981); *Wurst v. Pruyn*, 250 La. 1109, 202 So.2d 268 (1967); *Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982). The Supreme Court of Wyoming, in deciding that a warranty of habitability is implied in a construction contract wherein the builder agrees to erect a house on land of the owner, concluded that:

> We can see no difference between a builder or contractor who undertakes construction of a home and a builder-developer. To the buyer of a home the same considerations are present, no matter whether a builder constructs a residence on the land of the owner or whether the builder constructs a habitation on land he is developing and selling the residential structures as part of a package including the land. It is the structure and all its intricate components and related facilities that are the subject matter of the implied warranty. Those who hold themselves out as builders must be just as accountable for the workmanship that goes into a home that a buyer or his successor or successors in interest expect to occupy in the years that thereafter follow, as are builder-developers.

*Moxley, supra* at 736. We are in full agreement with the statements of the Supreme Court of Wyoming and, accordingly, we find no reason not to apply the basic concepts leading to recognition of the implied warranty of habitability and reasonable workmanship in *Elderkin, supra,* to builders generally who contract with the general public for the construction of residential homes.[2]

We now reverse the entry of judgment on the pleadings in favor of the appellee and remand for further proceedings

2. Our holding here is limited, of necessity, to the particular facts of the case presently before us, namely, a written construction contract executed by a builder and a layperson for the construction, according to plans and specifications furnished by the builder, of a residential house upon the layperson's land. We express no opinion on whether an implied warranty of habitability will be extended in other factual contexts.

consistent with this Opinion. We are deciding this case only upon a motion for judgment on the pleadings and we therefore express no opinion on whether appellants will ultimately be able to establish the breach of contract action they allege.

Jurisdiction is relinquished.