603 A.2d 663

Karl M. KOTOVSKY and Sharon M. Kotovsky, his wife, Appellants,

v.

SKI LIBERTY OPERATING CORPORATION, t/d/b/a Ski Liberty, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 24, 1991.

Filed Feb. 27, 1992.

Petition for Allowance of Appeal Denied July 1, 1992.

Richard C. Angino, Harrisburg, for appellants.

Hugh M. Emory, Paioli, for appellee.

Before WIEAND, MONTEMURO and KELLY, JJ.

WIEAND, Judge:

While participating in the second heat of a downhill ski race, Karl Kotovsky failed to negotiate a turn at the fourth gate and collided with a wooden fence post situated along the side of the course. As a result of this accident, he received serious injuries. Alleging negligence in failing to pad the post, Kotovsky and his wife, Sharon, commenced an action for damages against Ski Liberty Operating Corpora-

tion (Ski Liberty), the owner of the slope. In its answer to the complaint, Ski Liberty pleaded two exculpatory agreements and releases which Kotovsky had executed prior to participating in the downhill ski race. By the terms of these agreements and releases, which Kotovsky admitted, he expressly assumed the "risks, conditions and hazards which may occur whether they now be known or unknown." He also released the ski area, as well as the promoters, sponsors, organizers and others, "from any and all liability, whether known or unknown, even though that liability may arise out of negligence or carelessness on the part of persons or entities mentioned above."[1]  Because of these

---

**1.** The first release provided, in pertinent part, as follows:

I agree that I am alone responsible for my safety while participating in competitive events and/or training for competitive events and specifically acknowledge that the following persons or entities including the United States Ski Association, the United States Ski Team, the United States Ski Coaches Association, the ski area, the promoters, the sponsors, the organizers, the promoters, the sponsors, the organizers, the promoter clubs, the officials and any agent, representative, officer, director, employee, member or affiliate of any person or entity named above are not responsible for my safety. *I specifically RELEASE and DISCHARGE, in advance, those parties from any and all liability whether, known or unknown, even though that liability may arise out of negligence or carelessness on the part of persons or entities mentioned above. I agree to accept all responsibility for the risks, conditions and hazards which may occur whether they now be known or unknown.* Being fully aware of the risks, conditions and hazards of the proposed activity as a competitor, coach or official, I HEREBY AGREE TO WAIVE, RELEASE AND DISCHARGE any and all claims for damages for death, personal injury or property damage which I may have or which may hereafter accrue to me as a result of my participation in competitive events or training for competitive events, against any person or entity mentioned above whether such injury or damage was foreseeable. I further agree to forever HOLD HARMLESS and INDEMNIFY all persons and entities identified above, generally or specifically, from any and all liability for death and/or personal injury or property damage result[ing] in any way from my participating in competitive events or training for competitive events.

. . . . .

This Acknowledgement of and Assumption of Risk and Release shall be binding upon my heirs and assigns. (Emphasis added).

The second release provided as follows:

If you do not accept fully the conditions below *do not* compete, officiate, coach or in any other way participate in any event.

exculpatory agreements and releases, the trial court entered judgment on the pleadings in favor of Ski Liberty. The plaintiffs appealed.

The standard for reviewing a judgment on the pleadings was stated in *Lyon v. Nationwide Ins. Co.*, 390 Pa.Super. 25, 567 A.2d 1100 (1989), as follows:

In reviewing an order granting judgment on the pleadings, we must limit our consideration to the facts set forth in the pleadings, such as the complaint, answer, reply to new matter and relevant documents, and accept as true all of the well-pleaded allegations of the party against whom the motion is granted. *Aughenbaugh v. North American Refractories*, 426 Pa. 211, 231 A.2d 173 (1967); *Keystone Automated Equipment Co., Inc. v. Reliance Insurance Co.*, 369 Pa.Super. 472, 535 A.2d 648 (1988), *allocatur denied*, 519 Pa. 654, 546 A.2d 59 (1988); *Jones v. Travelers Insurance Company*, 356 Pa.Super. 213, 514 A.2d 576 (1986); *Gallo v. J.C. Penney Casualty Insurance Co.*, 328 Pa.Super. 267, 476 A.2d 1322 (1984); *Eberhart v. Nationwide Mutual Insurance Co.*, 238 Pa.Super. 558, 362 A.2d 1094 (1976). Judgment on the pleadings is proper only when no material facts are in dispute. *Groff v. Pete Kingsley*, 374 Pa.Super. 377, 543 A.2d 128 (1988); *Vogel v. Berkley*, 354 Pa.Super. 291, 511

I, the undersigned, know that alpine and nordic skiing are action sports carrying significant risk of personal injury. Racing, jumping or freestyle competition is even more dangerous. I know that there are natural and man-made obstacles or hazards, surfaces and environmental conditions, and risks which in combination with my action can cause me *very* severe or occasionally fatal injury. I agree that I and not the ski area or its staff or American Ski Racing Alliance, Inc. "(ASRA") or its staff, am responsible for my safety while I participate in, or train for these events.

I HEREBY RELEASE and discharge, on behalf of myself, my heirs, executors, personal representatives and assigns, ASRA, USSA, their affiliates and subsidiaries and their respective directors, officers, agents, employees, successors and assigns or any of them, from any and all actions, causes of action, claims, damages, demands, injuries and liabilities of any nature whatsoever (including reasonable attorneys fees and interest) arising out of or in any manner connected with their involvement with ski races organized, promoted or operated by ASRA. (Emphasis in original).

A.2d 878, 880 (1986), *citing Dudash v. Palmyra Borough Authority,* 335 Pa.Super. 1, 483 A.2d 924 (1984); *Del Quadro v. City of Philadelphia,* 293 Pa.Super. 173, 437 A.2d 1262 (1981). "In reviewing the court's decision, we must determine if the action of the court was based on a clear error of law or whether there were facts disclosed by the pleading which should properly go to the jury. The decision will be affirmed only in cases which are clear and free from doubt." *Groff, supra* 374 Pa.Super. at 382, 543 A.2d at 130, *quoting Vogel, supra* 354 Pa.Super. at 296, 511 A.2d at 880. Judgment on the pleadings may be appropriate in cases which turn upon the interpretation of a written agreement. *Vogel, supra* 354 Pa.Super. at 296, 511 A.2d at 880; *Gallo, supra* 328 Pa.Super. at 270–71, 476 A.2d at 1324, *quoting DiAndrea v. Reliance Savings and Loan Association,* 310 Pa.Super. 537, 546, 456 A.2d 1066, 1070 (1983).

*Id.,* 390 Pa.Superior Ct. at 26–27, 567 A.2d at 1101. (footnote omitted).

■ Downhill skiing is a dangerous activity. Downhill racing is even more dangerous. In recognition of the hazardous nature of such activity, the legislature has expressly provided that assumption of the risk shall be a complete defense to actions for downhill skiing injuries. See: 42 Pa.C.S. § 7102(c).[2]

In the instant case, appellant was an experienced skier, who was well acquainted with the hazards of downhill racing. Indeed, he had previously skied on the same slope on which he received his injuries. Despite this knowledge,

---

**2.** This provision of the law was enacted as an amendment to the Comparative Negligence Law as follows:

**(c) Downhill skiing.—**

(1) The General Assembly finds that the sport of downhill skiing is practiced by a large number of citizens of this Commonwealth and also attracts to this Commonwealth large numbers of nonresidents significantly contributing to the economy of this Commonwealth. It is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing.

(2) The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified by subsection (a) and (b).

he expressly agreed to assume the risk of injury and released the owner and operator of the slope from all liability, even that which might result from negligence.

In *Zimmer v. Mitchell and Ness*, 253 Pa.Super. 474, 385 A.2d 437 (1978), *aff'd*, 490 Pa. 428, 416 A.2d 1010 (1980), the Superior Court laid down the following standards for a valid exculpatory agreement.

The contract must not contravene any policy of the law. It must be a contract between individuals relating to their private affairs. Each party must be a free bargaining agent, not simply one drawn into an adhesion contract, with no recourse but to reject the entire transaction. In the instant case the validity of the agreement is apparent. However, to be enforceable, several additional standards must be met. First, we must construe the agreement strictly and against the party asserting it. Finally, the agreement must spell out the intent of the parties with the utmost particularity.

*Id.*, 253 Pa.Superior Ct. at 478, 385 A.2d at 439, citing *Employers Liability Assurance Corp. v. Greenville Business Men's Ass'n*, 423 Pa. 288, 224 A.2d 620 (1966). See also: *Kotwasinki v. Rasner*, 436 Pa. 32, 38–39, 258 A.2d 865, 868 (1969).

The agreement in the instant case was not one of adhesion. Appellant was not required to enter the contract, but did so voluntarily in order to participate in a downhill ski race. This activity was not essential to appellant's personal or economic well-being; it was purely a recreational activity. See: *Valeo v. Pocono International Raceway, Inc.*, 347 Pa.Super. 230, 500 A.2d 492 (1985).

■ The releases also did not contravene public policy. They were contracts between private parties and pertained only to the parties' private rights. They did not in any way affect the rights of the public. See: *Seaton v. East Windsor Speedway, Inc.*, 400 Pa.Super. 134, 582 A.2d 1380 (1990); *Valeo v. Pocono International Raceway, Inc.*, *supra*. See also: *Grbac v. Reading Fair Co., Inc.*, 521 F.Supp. 1351 (W.D.Pa.1981), *aff'd*, 688 F.2d 215 (3d Cir.

1982). Indeed, the legislature's action in enacting 42 Pa. C.S. § 7102(c) would seem to suggest that the policy in this Commonwealth is to enforce the doctrine of assumption of the risk for persons knowingly engaging in downhill skiing.

The exculpatory agreement and release in this case demonstrated clearly and unequivocally the intent of the parties. Its purpose, as stated expressly therein, was to release the "ski area" from all liability for injury to appellant caused by natural or man made obstacles on the slope, including hazards resulting from negligence by the owner. The fact that the release specifically referred to and included possible liability for acts of negligence distinguishes the release in this case from that in *Brown v. Racquetball Centers, Inc.*, 369 Pa.Super. 13, 534 A.2d 842 (1987), where the plaintiff had slipped on a wet tile floor while exiting a shower. Because the owner of the athletic facilities had been charged with negligence, the plaintiff's action was not barred by a release which failed to absolve the owner from liability for his own negligence. In the instant case, appellee was also released from liability for its own negligence.

There was no compulsion for appellant to participate in the downhill ski race which caused his injuries. In order to participate in this hazardous event, he agreed to assume the risk of injury and released the owner of the slope, as well as others, from all liability for injuries resulting therefrom, including injuries caused by another's negligence. Appellant's exculpatory agreement and release bars the present action. Therefore, the trial court properly entered judgment on the pleadings for appellee.

Judgment affirmed.