**Kapetanovich v. Fox**

*Gary Milnes,* for plaintiffs.
*Thomas J. May,* for defendants.

WETTICK, *J.,* September 20, 1993—The issue that this opinion addresses is whether the implied warranty arising out of the sale of new residential housing extends to remote purchasers.

In *Elderkin v. Gaster,* 447 Pa. 118, 288 A.2d 771 (1972), the Pennsylvania Supreme Court concluded that the caveat emptor rule as applied to new houses is an anachronism out of harmony with modern home building practices and held that a builder/vendor impliedly warrants that the house that he has built and is selling is constructed in a reasonable workmanlike manner and that it is fit for the purpose intended—habitation. Since 1972, the Pennsylvania Superior Court has consistently looked to the underlying rationale for the *Elderkin* opinion in deciding the scope of the implied warranty of reasonable workmanship and habitability. See *e.g., Groff v. Pete Kingsley Building, Inc.,* 374 Pa. Super. 377, 543 A.2d 128 (1988); *Tyus v. Resta,* 328 Pa. Super. 11, 476 A.2d 427 (1984).

Defendants are in the business of constructing and selling houses. They completed the house that is the subject of this litigation in March 1989. Plaintiffs are the second or third owners of this house. They did not purchase the house from defendants. Defendants did not construct the house for plaintiffs.

Plaintiffs allege that defendants breached the implied warranty of reasonable workmanship and habitability by their failure to construct the foundation for the front porch of the house in a proper manner. They seek to

recover the money that they will expend to correct these construction defects.

Defendants have filed preliminary objections in the nature of a demurrer that are the subject of this opinion and order of court. The basis for the preliminary objections is that the implied warranty of reasonable workmanship and habitability does not extend to remote purchasers.

No Pennsylvania appellate court cases have addressed this issue. The Pennsylvania Common Pleas Court opinions are divided. See *Moyer v. White*, 48 D.&C.3d 487 (Dauphin 1988), and cases cited therein. The case law in other jurisdictions is also divided. See cases cited in *Richards v. Powercraft Homes, Inc.*, 678 P.2d 427 (Ariz. 1984); *Moyer v. White, supra; Liability of Builder of Residence for Latent Defects Therein as Running to Subsequent Purchasers from Original Vendee*, 10 ALR 4th 385 (1981).

I find the case law that extends the implied warranty to subsequent purchasers to be persuasive. I particularly rely on the opinions of Vice Chief Justice Gordon in *Richards v. Powercraft Homes, Inc., supra;* Justice Clark in *Redarowicz v. Ohlendorf,* 441 N.E. 2d 324 (Ill. 1982); and Judge Dowling in *Moyer v. White, supra.*

The implied warranty is a creature of public policy. The warranty was created because a builder who exercises reasonable care should be capable of constructing a house that meets the warranty standards, because the price that the buyer is willing to pay is based on the assumption that the newly constructed house meets contemporary community standards for function and habitability, and because the contractor is the only party that is in a position to know whether the house has been built in accordance with these standards. Even a knowledgeable buyer does not have access to the

underlying structural work. Furthermore, defects attributable to negligent or deliberate failures to comply with building codes frequently do not manifest themselves until many years after the house was constructed.

The same public policy that serves as the basis for the creation of the implied warranty supports its extension to remote purchasers. Any structural defects discovered after the subsequent purchaser acquires the property will harm this purchaser in the same fashion as the initial purchaser. At the time of this purchase, the subsequent purchaser is in no better position than the initial purchaser to discover hidden structural defects. Also, the purchase price assumes that this relatively new house meets functional and habitability standards.

Furthermore, the extension of the warranty to remote purchasers does not impose new burdens on the contractor. The contractor was paid to deliver a house that will be free from construction deficiencies. Since 1972, the contractor has known that construction deficiencies include a breach of the implied warranty of reasonable workmanship and habitability. Consequently, since that date, the money that the contractor charges for a house includes the cost of an implied warranty for the life of the warranty. If the case law allows the contractor to avoid its responsibilities under the warranty simply because the original purchaser happens to transfer the property within the life of the warranty, the law creates a windfall for the contractor and its insurance carrier.

The sole purpose of the warranty is to protect the purchasers' reasonable expectations that the house which they paid for is in the condition that they observed. This means that if the defect had manifested itself to the remote purchaser before the sale, this would have been reflected

through a lower purchase price. Consequently, the implied warranty extended to the subsequent purchaser does not include observable defects. See *e.g., Richards v. Powercraft Homes, Inc., supra,* which holds that a subsequent purchaser can recover only for latent defects which become manifest after the purchase and which were not discoverable had a reasonable inspection of the house been made prior to the purchase.

Defendants contend that this privity issue should be based on the case law governing the sale of goods rather than on the case law creating and defining the scope of the implied warranty of habitability and workmanship for new construction. I find no merit to this position because of the significant differences between consumer transactions involving the sale of goods and consumer transactions involving the sale of new housing including the enormous cost of new housing, the use of long-term financing to effect the purchase, the realistic expectation that the value of the house will increase over time, the realistic expectation that a properly maintained house will last indefinitely, and the impossibility of discovering. many structural defects. In the recent case of *Romeo & Sons, Inc. v. P.C. Yezbak & Son, Inc.,* 421 Pa. Super. 333, 617 A.2d 1320 (1992), the issue before the court was whether a contract for the construction of a warehouse should be governed by the four-year limitation period governing a contract for the sale, construction, or furnishing of tangible personal property (42 Pa.C.S. §5525(1)), or by the six-year catch-all limitation set forth in 42 Pa.C.S. §5527. The court said that for almost 20 years the Pennsylvania case law has distinguished between contracts for the construction of homes and/or commercial sites and contracts for the sale of goods. On the basis of this case law the court applied the six-year limitation period:

"In the interest of fair play and in light of the expected long-term life span of a house and/or commercial structure and the builder's attendant ethical and legal responsibilities to its customer, we find the purchaser and his investment must be afforded the six years of protection provided by section 5527. To find otherwise would be grossly unfair to the buyer, who routinely expends large sums of money in the hope of securing a structurally and financially sound investment. Therefore, we find the statute of limitations applicable to the construction contract controversy with which we are faced is section 5527 [six year limitation]." *Id.* at 338, 617 A.2d at 1323.

For these reasons, I overrule defendants' preliminary objections in the nature of a demurrer.

### ORDER

And now, September 20, 1993, it is hereby ordered that defendants' preliminary objections are overruled.