## Taylor v. L.A. Fitness International LLC

*William J. Fox,* for plaintiffs.
*Norman W. Briggs,* for defendants.

YOUNGE, *J.,* August 30, 2010—The plaintiffs, Kimberly and Andrew Taylor, filed this appeal from this court's order that granted a motion for summary judgment filed by the above-captioned defendants.[1]

## FACTS AND PROCEDURE

This personal injury action was brought against the defendants by the plaintiff, Kimberly Taylor, who was a member of L.A. Fitness and a client of Body of Change. The plaintiff was seriously injured in June of 2007 while exercising at the Huntingdon Valley location for the defendant, L.A. Fitness. The plaintiff alleged to have hired

---

1. The plaintiffs, Kimberly and Andrew Taylor, will be referred to collectively as the plaintiff throughout the remainder of this opinion because Andrew Taylor does not assert an independent cause of action against the defendants. His claim is based on loss of consortium.

the defendant, Body of Change, to provide personal trainers to assist her while exercising at L.A. Fitness. At the specific time of her injury, she alleged to have been exercising with the defendant, Dorian Jefferson Hale, a personal trainer and agent of the defendant, Body of Change. In her complaint, she alleged that defendant Hale taught her an improper exercise and failed to properly assist or spot her while exercising. She alleged that the negligence of defendant Hale caused her shoulder injury. She alleged that defendant Hale was an agent of L.A. Fitness and Body of Change. Her claim against defendants, L.A. Fitness and Body of Change, was based on agency and vicarious liability under a theory of respondeat superior.

Following discovery, the defendants filed the motion for summary judgment that is currently at issue in this appeal. In their motion, the defendants asserted immunity from suit based on exculpatory clauses contained in the membership agreement that the plaintiff entered into with L.A. Fitness and the fitness service agreement and release of liability that the plaintiff entered into with Body of Change.[2]

The membership agreement at issue contained an exculpatory clause that read as follows:

2. After this court granted the defendants' motion for summary judgment, the plaintiff filed two motions to reconsider this court's order that granted summary judgment. In one of her motions to reconsider, she argued for the first time that she did not sign the membership agreement with L.A. Fitness, For a complete discussion of why her motion for reconsideration was without merit and a discussion of the procedural history surrounding that motion see section F of this opinion.

*"Important: Release and Waiver of Liability and Indemnity*

"You hereby acknowledge and agree that member's use of L.A. Fitness' facilities, services, equipment or premises, involves risks of injury to persons and property, including those described below, and member assumes full responsibility for such risks. In consideration of being permitted to enter any facility of L.A. Fitness (a 'club') for any purpose including, but not limited to, observation use of facilities, services or equipment, or participation in any way, member agrees to the following: member hereby releases and holds L.A. Fitness, its directors, officers, employees, and agents harmless from all liability to member and member's personal representatives, assigns, heirs, and next of kin for any loss or damage and forever gives up any claim or demands therefore, on account of injury to member's person or property, including injury leading to death of member, whether caused by the active or passive negligence of L.A. Fitness or otherwise, to the fullest extent permitted by law, while member is in, upon, or about L.A. Fitness premises or using any L.A. Fitness facilities, services, or equipment. Member also hereby agrees to indemnify L.A. Fitness from any loss, liability, damage or cost L.A. Fitness may incur due to the presence of member in, upon or about the L.A. Fitness premises or in any way observing or using any facilities or equipment of L.A. Fitness whether caused by the negligence of member or otherwise.

"You represent (a) that member is in good physical condition and has no disability, illness, or other condition that could prevent member from exercising without injury or impairment of member's health, and (b) that member has consulted a physician concerning an exercise

program that will not risk injury to member or impairment of member's health. Such risk of injury includes (but is not limited to): injuries arising from use by member or others of exercise equipment and machines; injuries arising from participation by member or others in supervised or unsupervised activities or programs at a club; injuries and medical disorders arising from exercising at a club such as heart attacks, strokes, heat stress, sprains, broken bones, and torn muscles and ligaments, among others; and accidental injuries occurring anywhere in club dressing rooms, showers and other facilities. Member further expressly agrees that the foregoing release, waiver and indemnity agreement is intended to be as broad and inclusive as is permitted by the law of the State of Pennsylvania and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full force and effect. Member has read this release and wavier of liability and indemnity clause, and agrees that no oral representations, statements or inducement apart from this agreement have been made." (Defendants' motion for summary judgment, exhibit B (July 6, 2009).)

The fitness service agreement and release of liability with Body of Change contained two clauses that were relevant to the personal injury action brought by the plaintiff. These clauses are entitled "Acknowledgment and assumption of risk" and "Limitation of liability and full release of BOC" and read in relevant part:

*"Acknowledgement and assumption of risk:* Client acknowledges that the services purchased hereunder include participation in strenuous physical activities, including, but not limited to, aerobic dance, weight training, stationary bicycling, various aerobic conditioning

machinery and various nutritional programs offered by BOC (the 'physical activities'). Client acknowledges these physical activities involve the inherent risk of physical injuries or other damages, including, but not limited to, heart attacks, muscle strains, pulls or tears, broken bones, shin splints, heat prostration, knee/lower back/foot injuries and any other illness, soreness, or injury however caused, occurring during or after client's participation in the physical activities. Client further acknowledges that such risks include, but are not limited to, injuries caused by the negligence of an instructor or other person, defective or improperly used equipment, over-exertion of client, slip and fall by client, or an unknown health problem of client. Client agrees to assume all risk and responsibility involved with client's participation in the physical activities. Client affirms that client is in good physical condition and does not suffer from any disability that would prevent or limit participation in the physical activities. Client acknowledges participation will be physically and mentally challenging, and client agrees that it is the responsibility of client to seek competent medical or other professional advice, regarding any concerns or questions involved with the ability of client to take part in the physical activities. By signing this agreement, client asserts that client is capable of participating in the physical activities. Client agrees to assume all risk and responsibility for client's exceeding her physical limits.

"*Limitation of liability and full release of BOC:* Client, his or her heirs, assigns and next of kin, agree to fully release BOC, its owners, employees, any related entities or authorized agents, including independent contractors from any and all liability, claims and/or litigation or

other actions that client may have for injuries, disability, or death or other damages of any kind, including but not limited to, direct, special, incidental, indirect, punitive or consequential damages whether arising in tort, contract, breach of warranty or arising out of participation in the services, including, but not limited to the physical activities, even if caused by the negligence or fault of BOC, its owners, employees, any related entities or other authorized agents, including independent contractors. Client is urged to have this agreement reviewed by an attorney before signing." (Defendants' motion for summary judgment, exhibit C (July 6, 2009).)

## DISCUSSION

This court granted the defendants' motion for summary judgment and dismissed the plaintiff's complaint because the agreements that the plaintiff entered into with the defendants contained exculpatory clauses that relieved the defendants from all liability for the injuries suffered by the plaintiff. The defendants went to great lengths to comply with Pennsylvania law when they drafted the exculpatory clauses at issue. The language used in these exculpatory clauses mirrored the language of the two exculpatory clauses that were enforced in *Kotovsky Ski liberty Operating Corp.,* 412 Pa. Super. 442, 603 A.2d 663 (1992).[3]

---

3. The plaintiff in *Kotovsky* was injured while participating in a downhill ski race. He specifically collided with a fence post along the outside of the race course. The court in *Kotovsky* affirmed a trial court order that granted a motion for judgment on the pleadings based on an exculpatory agreement entered into between the parties prior to the competition.

In *Kotovsky* the first exculpatory clause provided, in pertinent part, as follows:

"I agree that I am alone responsible for my safety while participating in competitive events and/or training for competitive events and specifically acknowledge that the following persons or entities including the United States Ski Association, the United States Ski Team, the United States Ski Coaches Association, the ski area, the promoters, the sponsors, the organizers, the promoters, the sponsors, the organizers, the promoter clubs, the officials and any agent, representative, officer, director, employee, member or affiliate of any person or entity named above are not responsible for my safety. *I specifically Release and Discharge, in advance, those parties from any and all liability whether, known or unknown, even though that liability may arise out of negligence or carelessness on the part of persons or entities mentioned above, I agree to accept all responsibility for the risks, conditions and hazards which may occur whether they now be known or unknown.*

"Being fully aware of the risks, conditions and hazards of the proposed activity as a competitor, coach or official, I Hereby Agree To Waive, Release And Discharge any and all claims for damages for death, personal injury or property damage which I may have or which may hereafter accrue to me as a result of my participation in competitive events or training for competitive events, against any person or entity mentioned above whether such injury or damage was foreseeable.

"I further agree to forever Hold Harmless and Indemnify all persons and entities identified above, generally or specifically, from any and all liability for death and/

or personal injury or property damage result[ing] in any way from my participating in competitive events or training for competitive events.

"This acknowledgement of and assumption of risk and release shall be binding upon my heirs and assigns. (emphasis added)" *Kotovsky v. Ski Liberty Operating Corp.*, 412 Pa. Super. 442, 444 n.1, 603 A.2d 663, 664 n.1 (1992).

The second exculpatory clause in *Kotovsky* provided as follows:

"If you do not accept fully the conditions below *do not* compete, officiate, coach or in any other way participate in any event. I, the undersigned, know that alpine and nordic skiing are action sports carrying significant risk of personal injury. Racing, jumping or freestyle competition is even more dangerous. I know that there are natural and man-made obstacles or hazards, surfaces and environmental conditions, and risks which in combination with my action can cause me *very* severe or occasionally fatal injury. I agree that I and not the ski area or its staff or American Ski Racing Alliance Inc. (ASRA) or its staff, am responsible for my safety while I participate in, or train for these events.

"I Hereby Release and discharge, on behalf of myself, my heirs, executors, personal representatives and assigns, ASRA, USSA, their affiliates and subsidiaries and their respective directors, officers, agents, employees, successors and assigns or any of them, from any and all actions, causes of action, claims, damages, demands, injuries and liabilities of any nature whatsoever (including reasonable attorneys fees and interest) arising out of or in any man-

ner connected with their involvement with ski races organized, promoted or operated by ASRA. (emphasis in original)." *Id.* at 444-45 n.1, 603 A.2d at 664 n.1.

The court in *Zimmer v. Mitchell and Ness,* 253 Pa. Super. 474, 385 A.2d 437 (1978), was confronted with an exculpatory clause that was contained in a rental agreement for ski equipment.[4] The exculpatory clause in that rental agreement read, in relevant part, as follows, "I furthermore release Mitchell and Ness from any liability for damage and injury to myself or to any person or property resulting from the use of this equipment, accepting myself the full responsibility for any and all such damage or injury." *Id.* at 478, 385 A.2d at 439. The court chose to enforce the agreement despite the fact that the language of the agreement did not release the defendant for liability based on its own negligence. A different result was reached in *Brown* where the Superior Court invalidated an exculpatory agreement because "The release in question [did] not spell out the intention of the parties with the necessary particularity. The language [did] not set forth in an unambiguous manner that the releaser, in signing the agreement, intend[ed] to absolve the releasee of liability for the releasee's own negligence." *Brown v. Racquetball Centers Inc.,* 369 Pa. Super. 13, 16, 534 A.2d 842, 843 (1987).[5]

---

4. The plaintiff in *Zimmer* alleged to have been injured when the bindings on the ski equipment that he had rented from the defendant failed to properly release him. The court in *Zimmer* affirmed an order that granted summary judgment based on an exculpatory clause contained in a rental agreement.

5. The plaintiff in *Brown* was a member of a health club who slipped when exiting the club's shower facilities. The court reversed a trial court order that granted summary judgment in favor of the health club

In the case sub judice, the defendants made every possible effort to draft exculpatory clauses with language that complied with Pennsylvania precedent. The exculpatory clauses drafted by the defendants are linguistically similar to the exculpatory clauses quoted in *Kotovsky; Zimmer* and *Brown*. The defendants specifically attempted to remedy the problem identified by the court in *Brown* by including language that specifically released liability for injuries caused by the defendants' own negligence. Unlike the exculpatory agreement in *Brown,* in the case sub judice, the plaintiff clearly and unequivocally agreed to release the defendant, L.A. Fitness, from any and all claims whether caused "by the active or passive negligence of L.A. Fitness or otherwise." (Defendants' motion for summary judgment, membership

---

based on an exculpatory clause contained in the application form signed by the plaintiff upon joining the health club. The exculpatory clause read, in relevant, part:

"I, LeRoy F. Brown, voluntarily enter the Westend Racquet Club, . . . , to participate in the athletic, physical and social activities therein. I have inspected the premises and know of the risks and dangers involved in such activities as are conducted therein and that unanticipated and unexpected dangers may arise during such activities. *I hereby and do assume all risks of injury to my person and property that may be sustained in connection with the stated and associated activities in and about those premises.* (emphasis added)

"In consideration of the permission granted to me to enter the premises and participate in the stated activities, I hereby, for myself, my heirs, administrators and assigns, release, remise and discharge the owners, operators and sponsors of the premises and its activities and equipment and their respective servants, agents, officers, and all other participants in those activities of and from all claims, demands, actions and causes of action of any sort, for injury sustained to my person and/ or property during my presence on the premises and my participation in those activities due to negligence or any other fault." *Id.* at 14-15, 534 A.2d at 842.

agreement exhibit B (July 6, 2009).) Under the terms of the fitness service agreement and release of liability, the plaintiff clearly and unequivocally agreed to release the defendants from any and all claims "even if caused by the negligence or fault of BOC [Body of Change], its owners, employees, any related entities or other authorized agents, including independent contractors." (*Id.,* exhibit C.) The fitness service agreement and release of liability also provided that the "[plaintiff] further acknowledges that such risks included, but are not limited to, injuries caused by the negligence of an instructor." (*Id.*)

In accordance with Pennsylvania precedent, the exculpatory clauses at issue were also highly visible and clearly noticeable within the membership agreement and fitness service agreement and release of liability. *Beck-Hummel v. Ski Shawnee Inc.,* 902 A.2d 1266, 1274 (Pa. Super. 2006) (standing for the proposition that an exculpatory clause should be conspicuous on the face of a document and espousing a three-part test for determining whether a reasonable person should have noticed an exculpatory clause contained in a document as follows: (1) the disclaimer's placement in the document, (2) the size of the disclaimer's print, and (3) whether the disclaimer was highlighted by being printed in all capital letters or in a type style or color different from the remainder of the document). A plain reading of the membership agreement and the fitness service agreement and release of liability shows that exculpatory clauses were both written in a larger and different type than the type used in the rest of the contracts in which they appeared. The clauses were both separated and sectioned apart from all other contractual provisions and encased within a box.

The membership agreement with L.A. Fitness was entitled "Important: Release And Waiver Of Liability And Indemnity." The exculpatory clauses in the fitness service agreement and release of liability contained the titles, "Limitation of liability and full release of BOC" and "Acknowledgement and assumption of risk." Both titles were written in bold and in a larger print size than all other material on the page.

The plaintiff was unable to cite a single valid reason for this court to decline to enforce the exculpatory clauses at issue. In her response to the defendants' motion for summary judgment and her motions to reconsider, the plaintiff cited six arguments in an attempt to persuade this court to allow her to proceed to trial. These arguments were as follows:

"(A) Defendants' failed to plead, in their answer and new matter, the defense of waiver and release with regard to the exculpatory clauses . . .

"(B) The exculpatory clauses are contracts of adhesion and, therefore, are unconscionable and unenforceable . . .

"(C) It is against public policy to enforce a consumer contract that waives negligence on the part of the vendor and its agents and employees . . .

"(D) The terms of the exculpatory clauses are ambiguous and, therefore, unenforceable . . .

"(E) There is no privity of contract between defendant, Hale, and plaintiff." (Plaintiffs' memorandum of law in support of their response to defendants' motion for summary judgment (August 5, 2009) (citing the topic head-

ings to plaintiff's five arguments against the entry of summary judgment).)

"(F) [Plaintiff] respectfully requests that this honorable court will enter an order amending the record to state that [the plaintiff] did not execute or sign any contract with [the] defendant, L.A. Fitness, LLC, and rescind and reverse the . . . order granting summary judgment." (Plaintiffs' motion for reconsideration based on new evidence of the . . . order granting defendants' motion for summary judgment (September 22, 2009) (citing the wherefore clause in said motion).)

### (A) *The Defendants' Specifically Pled Waiver and Release in Their Answer and New Matter Filed on September 10, 2009*

The defendants filed a late answer with new matter on September 10, 2009. This court allowed the defendants to pursue the exculpatory agreement as a defense despite the late pleading because the plaintiff was unable to show that she suffered prejudice as a result of the defendants' untimely pleading. In *Blumenstock v. Ginson,* 811 A.2d 1029 (Pa. Super. 2002), the court wrote:

"It is true that under Pa.R.C.P. 1030, release is an affirmative defense that ordinarily must be pled as new matter. *Holmes v. Lankenau Hospital,* 426 Pa. Super, 452, 627 A.2d 763, 765 (1993). Under the rule, if release is not pled as new matter, the right to assert the defense has been waived. *Id.* Nevertheless, our Rules of Civil Procedure must be liberally construed so that actions are resolved in a just, speedy and inexpensive manner consistent with Rule 126. *Id.* 765-66.

"The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties. Pa.R.C.P. 126.

"Where the rights of the plaintiff have not been prejudiced through the defendant's failure to plead the defense of release prior to filing a motion for summary judgment, the trial court is not required to strictly enforce Rule 1030. *Holmes,* 627 A.2d at 766." *Id.* at 1039.

In the case sub judice, the plaintiff could not show prejudice because the defendants' inadvertent oversight had no influence on the litigation. The defendants mailed a copy of their answer and new matter to the plaintiff on November 13, 2008, but failed to file a copy of the same with the prothonotary. The plaintiff did not file a 10-day notice of intent to take a default judgment and a default judgment was never entered. The defendants stated that they produced the membership agreement and the fitness service agreement and release of liability in their response to the plaintiff's request for production of documents on February 6, 2009. At deposition, the defendants specifically questioned the plaintiff about whether she signed the membership agreement and the fitness service agreement and release of liability, and she admitted that she signed both agreements. The defendants then advanced their defense based on the exculpatory clauses at the appropriate stage by motioning for summary judgment at the close of discovery.

**(B)** *This Court's Order Granting Summary Judgment Should Be Affirmed Because the Exculpatory Clauses at Issue Did Not Constitute Contracts of Adhesion*

The plaintiff argued that the membership agreement and the fitness service agreement and release of liability were contracts of adhesion and were, therefore, invalid. In support of this argument, she cited the fact that the defendants openly admitted that the terms of the agreements were nonnegotiable. The plaintiff was presented with standardized boiler plate contracts that contained exculpatory clauses. She was given no opportunity to negotiate the terms of these agreements. If she wanted to exercise at L.A. Fitness under the supervision of personal trainers provided by Body of Change, she had to sign the agreements as presented.

The membership agreement and fitness service agreement and release of liability were not contracts of adhesion because the plaintiff had the ability to seek other forms of exercise. *Pennington v. Lorpbardi-Martelli,* 42 D.&C.4th 425 (1999) (affirming a trial court's grant of summary judgments in favor of a stable owner and stating that the exculpatory agreement entered into prior to taking horse riding lessons was not a contract of adhesion because the plaintiff was free to select another riding school.). The plaintiff chose to exercise at L.A. Fitness under the guidance of a personal trainer who worked for Body of Change. The plaintiff could have exercised independently at home or at a variety of other locations including L.A. Fitness. The plaintiff's ability to choose the form of exercise that she would practice defeats her argument based on a theory of adhesion. For example, the court enforced an exculpatory agreement against a

plaintiff who was injured in a downhill ski race in *Kotovsky v. Ski Liberty Operating Corp.,* 412 Pa. Super. 442, 603 A.2d 663 (1992). In *Kotovsky,* the court stated that the exculpatory agreement was not one of adhesion because the plaintiff "was not required to enter the contract, but did so voluntarily in order to participate in the downhill ski race." *Id.* at 447, 603 A.2d at 665.

(C) *This Court's Order Granting Summary Judgment Should Be Affirmed Because Pennsylvania Has a Public Policy of Enforcing Exculpatory Agreements*

Exculpatory agreements in the context of athletic events and fitness club memberships have previously been the subject of litigation in Pennsylvania. However, the plaintiff is completely unable to cite to precedent to establish that exculpatory clauses in the nature of the type at issue in the case sub judice are invalid based on public policy grounds. Courts located in California and Kansas have enforced exculpatory agreements in personal injury actions where the plaintiff was a member of a fitness club and signed contract that contained an exculpatory clause. *Fata v. L.A. Fitness International LLC,* 2008 Cal. App. Unpub. Lexis 7926 (2008); and *Ko v. Bally Total Fitness Corp.,* 2003 U.S. Dist. Lexis 19378. In both *Fata* and *Ko,* there was no mention of public policy being violated by the enforcement of the exculpatory clauses contained in either membership agreement with the health club defendants in those cases. In *Zipusch v. L.A. Workout Inc.,* 155 Cal. App. 4th 1281 (2007), the court chose to not enforce an exculpatory agreement; however, it did not base its decision on public policy grounds. The plaintiff failed to support her argument that public policy prevents the enforcement of exculpatory

agreements when the plaintiff engages in athletic activities at a health club where the plaintiff is a member.

This court would like to call attention to the fact that its analysis would have been entirely different if the plaintiff had been working under the supervision of a licensed physical therapist. In *Leidy v. Deseret Enterprises Inc.,* 252 Pa. Super. 162, 361 A.2d 164 (1977), the court reversed a trial court order that granted a motion for judgment on the pleadings filed by the defendant (health spa) based on an exculpatory clause in a membership agreement entered into between the parties. In *Leidy,* the plaintiff alleged to have been "referred to the spa by her doctor as part of post-operative treatment following surgery on the lumbar area of her spine, but that the treatment she was in fact given was directly contrary to her doctor's instructions to the spa." *Id.* at 166, 381 A.2d at 166. In reversing, the court discussed both public policy and public interest in the context of the potential pit falls of allowing physical therapists to limit liability by entering into exculpatory agreements. The court stated, "The public has an interest in assuring that those claiming to be qualified to follow a doctor's orders are in fact so qualified, and accept responsibility for their actions." *Id.* 170, 381 A.2d at 168.

The reasoning and logic of *Leidy* is inapplicable to the sub judice because no recognized statewide standard of care exists for health clubs like L.A. Fitness or health club employees like defendant Hale. The legislature created the Board of Physical Therapy to establish rules and procedures to regulate physical therapy throughout the state of Pennsylvania. See 63 P.S. §1302.1. The Physical Therapy Practice Act, 63 PS. §1301 et seq., provides conclusive evidence of the public interest in protecting

the health, safety and welfare of those who seek the services of a physical therapist. Therefore, this court would have to be presented with an extremely unusual fact pattern before it would allow a physical therapist to escape liability based on an exculpatory agreement executed by his or her patient. It would be hard to believe that such an agreement truly regulated private interests. Yet at the same time, services provided by a personal trainer are substantially similar to the services provided by a physical therapist.

The fact pattern of the case sub judice highlights just one of the problems presented by the lack of legislative oversight of the health club and fitness industry in Pennsylvania. This court would like to refer this matter on the legislature so that it can establish a system for regulation. The clear effect of this lack of legislative oversight means that national health club chains, like the defendants, can be sued for negligence based upon a breach of an ordinary standard of care that could vary from county to county. Since an ordinary standard of care is applicable, the defendants need the protection provided by the exculpatory agreement. Clearly, the establishment of a uniform standard of care is necessary. It would then be possible to establish a statewide standard of care that would subject entities and individuals involved in the fitness industry to liability. Legislative oversight would also bolster any argument that an exculpatory agreement should be invalid based on public policy grounds.

(D) *The Terms of the Exculpatory Clauses Are Not Ambiguous and Are Therefore Enforceable*

As previously discussed, plaintiff clearly and unequivocally agreed to release the defendants from liabil-

ity for personal injury. There was nothing ambiguous about the terms of either exculpatory clause. Both clauses specifically identified the types of personal injuries contemplated by the parties when they entered into the agreement. Under the terms of the membership agreement, the plaintiff released L.A. Fitness from any risk of injury and agreed that:

"Such risk of injury include[d] (but is not limited to): injuries arising from use by member or others of exercises equipment and machines; injuries arising from participation by member or others in supervised or unsupervised activities or programs at a club; injuries and medical disorders arising from exercising at a club such as heart attacks, strokes, heat stress, sprains, broken bones, and torn muscles and ligaments, among others . . . ."

The terms of the fitness service agreement and release of liability, clearly stated that the,

"Client acknowledges these physical activities involve the inherent risk of physical injuries or other damages, including, but not limited to, heart attacks, muscle strains, pulls or tears, broken bones, shin splints, heat prostration, knee/lower back/foot injuries and any other illness, soreness, or injury however caused, occurring during or after client's participation in the physical activities."

The plaintiff suffered injuries that were specifically encompassed within the description of injuries contemplated in the exculpatory clauses offered by the defendants. The plaintiff's medical records state that she suffered an anteroinferior dislocation of the left shoulder that led to post-traumatic arthritis and contractures. The plaintiff was a registered nurse at Magee Rehabilitation.

She should have read and comprehended the ramifications of entering into the membership agreement and fitness service agreement and release of liability. As a nurse, the plaintiff should have also understood inherent danger in any exercise routine.

(E) *This Court's Order Granting Summary Judgment Should Be Affirmed Because Privity of Contract Between the Plaintiff and the Defendant, Dorian Jefferson Hale, Is a Completely Irrelevant Issue*

There was no dispute as to the fact that the plaintiff entered into the fitness service agreement and release of liability with Body of Change.[6] This agreement specifically states,

"Client, his or her heirs, and next of kin, agree to fully release BOC [Body of Change], its owners, employees, any related entities or other authorized agents, including independent contractors from any and all liability, claims and/or litigation or other actions that client may have for injuries, . . . even if caused by the negligence or fault of BOC [Body of Change], its owners, employees, any related entities or other authorized agents, including independent contractors."

There was no dispute as to the fact that defendant, Dorian Jefferson Hale, was an agent of Body of Change. Under the specific terms of the fitness service agreement and release of liability, all agents of Body of Change were released from liability over to the plaintiff. As with any other contract, the specific terms of this exculpatory

---

6. See section F herein discussing the plaintiff's motion to reconsider based on new evidence wherein she claims that she never signed the membership agreement with L.A. Fitness.

clause should be enforced in accordance with the plain meaning of its language. For example, the court in *Maloney v. Valley Medical Facilities Inc.,* 603 Pa. 399, 984 A.2d 478 (2009), permitted a plaintiff to maintain an action against an agent of a principal despite the fact that the plaintiff had released the agent's principal. In *Maloney,* the release that the plaintiff entered into with the principal specifically contained a reservation of rights clause that permitted the plaintiff to proceed against the agent. The court discussed the application of traditional contract principles and the need to effectuate the intent of the parties who enter into contracts.

The case sub judice is factually distinguishable from *Maloney;* yet, the reasoning and logic used in *Maloney* clearly favored the entry of summary judgment in favor of defendant Hale. The exculpatory clause found in the fitness service agreement and release of liability did not contain a reservation of rights clause whereby the plaintiff retained the right to sue defendant Hale. To the contrary, the specific language of the exculpatory clause released defendant Hale from all liability. Based on the reasoning contained in *Maloney,* this court placed great emphasis on the specific language of the exculpatory clause and decided to enforce the agreement as to defendant Hale as well as the other defendants.

(F) *Whether the Plaintiff Signed the Membership Agreement With the Defendant, L.A. Fitness, Is Not Relevant to the Question of Whether This Court's Order Granting Summary Judgment Should Be Affirmed*

After this court granted the defendants' motion for summary judgment, the plaintiff filed a motion to recon-

sider based on new evidence. She argued that this court should vacate its order granting summary judgment in favor of the defendant, L.A. Fitness, because she did not sign the membership agreement that contained the exculpatory clause that it offered as an affirmative defense. A brief review of the pleadings and procedural history of this case illustrates the irrelevant and meritless nature of this issue.

Originally the plaintiff filed a response to the defendants' motion for summary judgment that contained an affidavit wherein she admitted that she signed both the membership agreement and the fitness service agreement and release of liability. After this court granted the defendants' motion for summary judgment, the plaintiff filed a motion for reconsideration that contained a second affidavit that contradicted her previous affidavit. In her second affidavit, she averred that she did not sign the membership agreement.

The inconsistencies in the plaintiff's case could have created a legal issue that would have required judicial attention. However, the plaintiff did not attempt to establish a direct claim of liability against L.A. Fitness. The plaintiff did not bring an independent cause of action against L.A. Fitness on a theory like negligent hiring or supervision. The plaintiff's claim against L.A. Fitness was based on agency or vicarious liability for the actions or omissions of defendant Hale. L.A. Fitness could only be held liable if defendant Hale was held liable. The action against defendant Hale was barred based on the exculpatory clauses in the fitness service agreement and release of liability. The plaintiff openly admitted that she signed

fitness service agreement and release of liability which states:

"Client, his or her heirs, assigns and next of kin, agree to fully release BOC [Body of Change], its owners, employees, any related entities or other authorized agents, including independent contractors from any and all liability, claims and/or litigation or other actions that client may have for injuries . . . even if caused by the negligence or fault of BOC [Body of Change], its owners, employees, any related entities or other authorized agents, including independent contractors."

In reality, the plaintiff's signature on the membership agreement was really a mere technicality. A plain reading of both affidavits illustrates that the plaintiff was aware that she had entered into an agreement that had been reduced to writing when she joined L.A. Fitness. She then proceeded to use the facilities provided by L.A. Fitness on multiple occasions prior to her accident. She should have read the membership agreement and her use of the facility was akin to accepting the terms of the membership agreement.

## CONCLUSION

The defendants went to great lengths to draft exculpatory clauses that would comply with Pennsylvania law; therefore, this court was required to enforce the exculpatory clauses contained in the membership agreement and fitness service agreement and release of liability.