**Suzanne BECK–HUMMEL
and Michael Hummel,
Appellants,**

v.

**SKI SHAWNEE, INC., Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 15, 2006.

Filed June 30, 2006.

Eric W. Wassel, Wilkes–Barre, for appellants.

Michael Daley, Paoli, for appellee.

BEFORE: TODD and KLEIN, JJ., and McEWEN, P.J.E.

OPINION BY TODD, J.:

¶ 1 In this negligence suit involving a snow tubing injury at a ski resort, Suzanne Beck–Hummel ("Beck–Hummel") and Michael Hummel ("Hummel") (collectively, the "Hummels") appeal the July 8, 2005 order of the Monroe County Court of Common Pleas entering summary judgment in favor of Ski Shawnee, Inc. We reverse and remand.

¶ 2 The parties stipulated to the following facts:

1. On January 12, 2000 [the Hummels] visited Ski Shawnee, Inc., with their children, for the purposes of going snow tubing;

2. Michael Hummel purchased four tubing tickets from Ski Shawnee, Inc. [e]mployees;

3. Suzanne Beck–Hummel was not the buyer of the tubing tickets at the point of purchase but did use the tubing ticket to go snow tubing at Ski Shawnee, Inc. on January 12, 2000;

4. The tubing ticket purchased by Michael Hummel contained exact or similar exculpatory language as contained on the copy of the tubing ticket which is attached to this Stipulation as Exhibit "A" [discussed below];

5. On January 12, 2000, neither Suzanne Beck–Hummel [nor] Michael Hummel read the exculpatory language typed on the Ski Shawnee, Inc. snow tubing ticket;

6. No employee of Ski Shawnee, Inc. verbally informed Michael Hummel or Suzanne Beck–Hummel, on January 12,

2000, that by paying for and accepting the snow tubing ticket, they were entering into a contractual agreement with Ski Shawnee, Inc. the terms of which included the exculpatory language on the snow tubing ticket;

7. Neither Suzanne Beck–Hummel [nor] Michael Hummel had gone snow tubing at Ski Shawnee, Inc. prior to January 12, 2000.

(Stipulation of Counsel Re: Motion for Summary Judgment (Exhibit A to Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment) (hereinafter "Stipulation").) [1]

¶ 3 The following language was printed on the top part of the tubing ticket, in approximate relative font sizes:

# Shawnee Mountain Ski Area

## • PLEASE READ •

Acceptance of this ticket constitutes a contract. The conditions of the contract are set forth below on this ticket and will prevent or restrict your ability to sue Ski Shawnee, Inc.

Skiing, snowboarding and snow tubing, including the use of lifts, are dangerous sports with inherent and other risks. These risks include but are not limited to, variations in snow, steepness and terrain, trail side drop offs, ice and icy conditions, moguls, rocks, trees, and other forms of forest growth or debris (above and below the surface), bare spots, lift towers, utility lines, poles and guy wires, snowmaking equipment and component parts, trail fences and control nets and the absence of such fences and nets, and other forms of natural or man-made obstacles on and/or off designated trails, as well as collisions with equipment, obstacles or other participants; trail conditions vary constantly because of weather changes and skier use. These are some of the risks of skiing, snowboarding and snow tubing. All of the inherent and other risks of skiing, snowboarding and snow tubing present the risk of serious and/or fatal injury.

**In consideration of using Ski Shawnee, Inc.'s facilities, the purchaser or user of this ticket agrees to accept the risks of skiing, snowboarding and snow tubing and agrees not to sue Ski Shawnee, Inc. or it employees if hurt while using the facilities regardless of any negligence of Ski Shawnee, Inc. or its employees or agents.**

I agree that all disputes arising under this contract and/or from my use of the facilities at Shawnee **Mountain** shall be litigated exclusively in the Court of Common Pleas of Monroe County or in the United States District Court for the Middle District of Pennsylvania.

The purchaser or user of this ticket voluntarily assumes the risk of injury while participating in **these** sports.

(Exhibit A to Stipulation (emphasis original).) This text was printed above a dotted line in the center of the ticket, along which the ticket is presumably intended to be folded. Below the dotted line is a large blank area and some further text, printed obverse to the disclaimer above, including the "Ski Shawnee" logo and "Shawnee Mountain" in the largest text on the ticket, and "NON–TRANSFERABLE • NON–REFUNDABLE" in font size approxi-

mately the same as **"PLEASE READ"** above, except not bolded. (*Id.*)

¶ 4 The Hummels sued Ski Shawnee on October 15, 2001, alleging that, due to its negligence, Beck–Hummel fractured her ankle when she collided with a barrier wall in the run-out area of the snow tubing hill. In their complaint, they alleged negligence and, on behalf of Hummel, loss of consortium. Ski Shawnee raised the exculpatory language on the ticket as a complete defense, and Ski Shawnee filed a motion for

---

**1.** Given the context and title of these stipulations—i.e., "Stipulation of Counsel Re: Motion for Summary Judgment"—we presume

that these stipulations are limited in scope to Ski Shawnee's motion for summary judgment.

summary judgment on that basis. The trial court granted the motion, and this timely appeal followed, in which the Hummels ask:

A. Do genuine issues of material fact exist as to whether Suzanne Beck–Hummel released Ski Shawnee, Inc. from liability where it is stipulated that neither Ms. Beck–Hummel nor Mr. Hummel read the exculpatory language contained on the tubing ticket nor were instructed to do so?

B. Assuming, arguendo, that a contract was formed and the exculpatory language of the Ski Shawnee release is applicable, is the language ambiguous as relating to the allegations of negligent design of the snow tubing park set forth in [the Hummels'] Complaint?

(Appellants' Brief at 4.)

¶ 5 Our standard of review of an order granting or denying a motion for summary judgment is well established:

We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Pappas v. Asbel,* 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001) (citations omitted).

¶ 6 We first address the Hummels' claim that genuine issues of material fact exist concerning the enforceability of the release on the tubing ticket. For the reasons expressed below, because we cannot conclude as a matter of law that the release is enforceable, we find that the trial court erred in granting summary judgment to Ski Shawnee.

¶ 7 Releases are not favored in the law. *Zimmer v. Mitchell and Ness,* 253 Pa.Super. 474, 478, 385 A.2d 437, 439 (1978), *aff'd,* 490 Pa. 428, 416 A.2d 1010 (1980). To be enforceable, a release must meet the following standards: (1) it must not contravene any policy of the law; (2) it must be a contract between individuals relating to their private affairs; (3) each party must be a free bargaining agent, not simply one drawn into an adhesion contract, with no recourse but to reject the entire transaction; and (4) the agreement must spell out the intent of the parties with the utmost particularity. *Kotovsky v. Ski Liberty Operating Corp.,* 412 Pa.Super. 442, 447, 603 A.2d 663, 665 (1992) (citing *Zimmer, supra* ); *see also Employers Liab. Assur. Corp. v. Greenville Business Men's Ass'n,* 423 Pa. 288, 224 A.2d 620 (1966). We must construe such an agreement strictly and against the party asserting it. *Kotovsky,* 412 Pa.Super. at 447, 603 A.2d at 665.

¶ 8 Herein, the parties do not contest the enforceability of the release under the preceding standards—that is, that it may be enforced under *some* circumstances.[2] Rather, at issue is whether it is enforceable against the Hummels under the cir-

2. The Hummels, in their second issue on appeal, do contest whether the language of the disclaimer encompasses their claims, but we do not need to reach this issue.

cumstances of this case, including whether it was sufficiently conspicuous. The Hummels argue:

> [T]here was clearly no "meeting of the minds" that would establish the existence of a contract. Neither Michael Hummel nor Suzanne Beck–Hummel were ever informed that the barely readable type on the back of the snow tubing ticket would form the terms of a contractual agreement between themselves and Ski Shawnee, Inc. Nobody, at the time that the ticket was sold to Mr. Hummel, informed him that a contract was being formed. Furthermore, it is not disputed that Ms. Beck–Hummel was not in any way involved in the transaction of purchasing the tickets. In the absence of mutual assent to the language printed on the back of the snow tubing ticket, no contract was ever formed which contained such terms.

(Appellants' Brief at 11–12.) By contrast, Ski Shawnee argues that Beck–Hummel "was advised of the nature of the lift ticket by the lift ticket itself", that it "clearly and conspicuously releases" Ski Shawnee from liability, and that it "states in bold that the user" agrees not to sue Ski Shawnee if hurt while using its facilities. (Appellee's Brief at 13.)

¶ 9 The trial court granted summary judgment to Ski Shawnee in a one-page order stating it was "relying on" two recent common pleas court decisions. However, these two cases—*Mazza v. Ski Shawnee, Inc.,* 74 Pa. D & C.4th 416 (Monroe Cty.2005) and *Venn v. Shawnee Mountain Ski Area,* No. 5109 Civ.2002 (Monroe Cty. Common Pleas June 1, 2004)[3]—are distinguishable. In *Mazza,* the injured plaintiff had *signed two* releases, one provided by the snow tubing facility and the other provided by the organization who organized the trip. In *Venn,* the injured plaintiff never denied reading the disclaimer on the back of the lift ticket. Thus, in neither case was an unsigned, unread disclaimer at issue. Many of the cases cited by Ski Shawnee are similarly distinguishable. *See O'Neill v. Cove Haven, Inc.,* No. 3613 Civ.2000 (Phila. Cty. Common Pleas Nov. 32, 2001) (signed release), *aff'd,* 803 A.2d 804 (Pa.Super.2002) (table); *Forbes v. Ski Roundtop Operating Corp.,* No.2001–SU–0043–01 (York Cty. Common Pleas July 24, 2001) (signed release), *aff'd,* 804 A.2d 65 (Pa.Super.2002) (table); *Angle v. Hidden Valley Resort, L.P.,* No. 665 Civ. 2000 (Somerset Cty. Common Pleas Aug. 20, 2002) (signed release).[4]

¶ 10 We have found no binding decisions from the courts of this Commonwealth squarely addressing the enforceability of a release of the type at issue herein, under similar circumstances.[5] The closest case is *Romeo v. Pittsburgh Assoc.,* 787 A.2d 1027 (Pa.Super.2001), cited by Ski Shawnee. Therein, a woman attending a baseball game was injured when she was struck in the face by a foul ball. The baseball ticket she purchased had a disclaimer on the back stating that the ticket holder assumed the risk of certain dangers during the game, including batted balls. She

---

3. A copy of the slip opinion in this case is attached to Appellee's brief.

4. A copy of the slip opinion of each of these cases is attached to Appellee's brief.

5. In *Crews v. Seven Springs Mountain Resort,* 874 A.2d 100 (Pa.Super.2005), *appeal denied,* 890 A.2d 1059 (Pa.2005), we addressed, *inter alia,* the enforcement of the exculpatory language on a lift ticket. In that case, however, the injured plaintiff conceded that he had agreed to those terms and, rather, challenged only their application. *Id.* at 102.

sued, asserting claims for negligence, strict liability, breach of contract, breach of warranty, and violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and/or Plain Language Consumer Contract Act ("PLCA").

¶ 11 On appeal, she did not directly challenge the enforceability of the disclaimer, asking:

1. Does a business which stages entertainment known as "Major League Baseball", have any duty whatsoever under a negligence, assumed duty, strict liability, and/or contract theory of law, regarding its knowing exposure of its business invitees sitting in unprotected areas of the business premises to the risk of serious personal injury from line-drive foul balls?

2. Where during the ticket selling process such a business fails to reasonably advise its customers of such a risk, selectively protects through screening only those patrons paying the highest prices, and then adds a "fine print" disclaimer to the reverse of admission tickets, has that business violated the Pennsylvania Unfair Trade Practices Act and/or the Pennsylvania Plain Language Consumer Contract Act?

*Id.* at 1030.

¶ 12 The focus of our analysis was the negligence claim. This Court held that, independent of the ticket disclaimer, un-der the "no-duty" rule, operators of amusement facilities have no duty to warn spectators from common, frequent, and expected risks inherent in those types of activities, and we concluded that being hit by a foul ball was one such common, expected risk of attending baseball games. *Id.* at 1030–31.

¶ 13 In addressing the injured patron's remaining claims, we only conditionally addressed the enforceability of the ticket disclaimer.[6] With respect to the breach of contract claim, we held that "[e]ven if we were to assume that a contract existed" it would be subject to the limitations on the disclaimer, which disclaimed liability for batted balls. *Id.* at 1032–33. With respect to the claim for breach of an implied warranty of safety, we held that such a claim ran counter to the no-duty rule, and that "[e]ven if we recognized this warranty," the ticket disclaimed liability for injuries. *Id.* at 1033. Finally, with respect to the alleged violation of the UTPCPL and PLCA, we noted that, under the no-duty rule, the ball club had no duty to warn about the risk of foul balls and, further, "[e]ven if" such a warning was required, "we would rule that the warning printed on the reverse side of the admission ticket was sufficient." *Id.*[7]

¶ 14 Thus, in *Romeo*, we did not unequivocally address the enforceability of the ticket disclaimer. Further, our decision contains no discussion regarding whether the patron read the ticket. As a result, while *Romeo* suggests such dis-

---

6. We rejected the strict liability claim concluding that baseball was not an ultra-hazardous or abnormally dangerous activity. *Id.* at 1032.

7. We added:

The ticket is not a complex document that appellants needed to closely examine in or-der to locate the warning or understand its terms. The language of the warning clearly addressed the risk spectators faced from batted balls, and other than an advertisement, it was the only thing printed on the back of the ticket.

*Id.*

claimers are enforceable, we do not now find it to be controlling in the instant case.

¶ 15 Other, nonbinding, cases come to contrary conclusions. In *Nisbett v. Camelback Ski Corp.*, No. 2226 Civ.1992 (Monroe Cty. Common Pleas Sept. 30, 1996), a case cited by Ski Shawnee,[8] the trial court found enforceable the disclaimer on the back of the plaintiff's lift ticket reasoning that it was not against public policy. Further, even though the plaintiff had not read the ticket, the court, relying on the definition of conspicuousness in the warranty provisions of Pennsylvania's Uniform Commercial Code, 13 Pa.C.S.A. §§ 1201, 2316, determined that the disclaimer was sufficiently conspicuous to be enforced. *Nisbett,* slip op. at 8.

¶ 16 By contrast, in *Missar v. Camelback Ski Resort,* 30 Pa. D & C.3d 579 (Monroe Cty.1984), the trial court found the disclaimer on a lift ticket to be unenforceable. Although concluding that the substance of the disclaimer did not contravene public policy, the court found that its form did. Noting that the plaintiff never signed any document and denied having read the disclaimer, the court found that the disclaimer violated the public policy expressed in Pennsylvania's Uniform Commercial Code which requires exculpatory clauses to be set forth clearly and conspicuously, "with proper emphasis to engage the attention of a reasonable person." *Id.* at 585–86 (citing 13 Pa.C.S.A. §§ 2316, 2719, 1201, 2302). It reasoned:

The heading in capital letters, "NO REFUND—NO TRANSFER", gave not the slightest hint that the material which followed contained language of an exculpatory nature. That material was printed in small type (five point Pearl) which

was difficult, although not impossible, to read. Furthermore, the exculpatory disclaimer was not rendered 'conspicuous' by printing in larger or contrasting type of color.

*Id.* at 586. Thus, the court found the disclaimer unenforceable as a matter of law.

¶ 17 Ski Shawnee also cites *Savarese v. Camelback Ski Corp.,* 417 F.Supp.2d 663 (M.D.Pa.2005), although we find that case contains dispositive facts not present in the instant case. There, the plaintiff was injured when he tried to get out of the way of a ski lift. The district court granted summary judgment to the ski facility, relying on the exculpatory language in the release the plaintiff had signed, as well as in the lift ticket. With respect to the lift ticket, however, the court relied on an additional fact—that the window where the lift ticket was purchased directed the purchaser to the language on the ticket:

While I am not prepared to hold that the notice at the window where the lift ticket was purchased constitutes a release of the Defendant, it does provide Plaintiff with repetitive notice of the fact that skiing, "including the use of the lifts, is a dangerous sport", and it repeats the condition that the purchase of a lift ticket releases Defendant, even if negligent, and warns not to purchase a lift ticket unless the purchaser agrees to the release and to be bound by the language on the lift ticket.

*Id.* at 667. The court concluded that "the lift ticket purchased under these circumstances, viz the clear language next to the window and the clear language on the lift ticket, places the lift ticket on the level of being a valid exculpatory agreement as well." *Id.* In the instant case, the only

---

8. A copy of the slip opinion in this case is   attached to Appellee's brief.

indication of the disclaimer was the ticket itself.

¶ 18 By contrast, we find the decision in *Passero v. Killington, Ltd.*, 1993 WL 406726 (E.D.Pa. Oct.4, 1993), to be closely analogous to the present case. There, an injured skier sued the skiing facility, and the facility raised as a defense the exculpatory language printed on the back of the lift ticket purchased by the plaintiff. As here, the plaintiff stated that he never read the exculpatory language, that he was never told by the ticket seller or anyone else to read the ticket, and that he did not recall seeing any sign telling him to do so. *Id.* at *6. The facility presented no evidence to contradict the plaintiff's assertions.

¶ 19 In response to the facility's motion for summary judgment, and the parties' conflicting arguments regarding whether the presence of the exculpatory language constituted sufficient notice, or was sufficiently conspicuous, the trial court concluded that it could not decide the issue as a matter of law:[9]

> The determination of these issues are the linchpin of both Passero's case for liability and Killington's defense. Given their extraordinary significance, the court finds that is best left to the trier of fact to determine whether the language of the lift ticket reasonably communicated the existence of a contractual agreement to the purchaser, and whether the mere presence of exculpatory language on the lift ticket acts as a bar to recovery.

*Id.* at *7.

¶ 20 As the ticket disclaimer in the present case explicitly specifies that the user assumes the risk of participating in activities at Ski Shawnee, we also find guidance in Section 496B of the Restatement (Second) of Torts, which provides:

> § 496B.  Express Assumption of Risk
>
> A plaintiff who by contract or otherwise expressly agrees to accept a risk of harm arising from the defendant's negligent or reckless conduct cannot recover for such harm, unless the agreement is invalid as contrary to public policy.

Rest.2d Torts § 496B. Our Supreme Court explained this type of assumption of the risk as follows:

> In its simplest form, assumption of risk means that the plaintiff has given his express consent to relieve the defendant of an obligation to exercise care for his protection, and agrees to take his chances as to injury from a known or possible risk. The result is that the defendant, who would otherwise be under a duty to exercise such care, is relieved of that responsibility, and is no longer under any duty to protect the plaintiff.

*Howell v. Clyde*, 533 Pa. 151, 154 n. 2, 620 A.2d 1107, 1108 n. 2 (1993) (plurality) (citing Rest.2d Torts § 496B).[10] The ticket disclaimer clearly attempts to function in this fashion.

¶ 21 Particularly instructive herein, however, is comment d to Section 496B, which states:

> In order for an express agreement assuming the risk to be effective, it must appear that the plaintiff has given his

---

9. Although the court stated that Vermont law "most likely applie[d] to the issue of liability", *id.* at *5, the parties and the court cited both Vermont and Pennsylvania law.

10. This section of the Restatement has also been cited with approval in *Leidy v. Deseret Enter., Inc.*, 252 Pa.Super. 162, 169, 381 A.2d 164, 168 (1977) and *Staub v. Toy Factory, Inc.*, 749 A.2d 522, 529 (Pa.Super.2000) (citing *Howell, supra* ).

assent to the terms of the agreement. Particularly where the agreement is drawn by the defendant, and the plaintiff's conduct with respect to it is merely that of a recipient, it must appear that the terms were in fact brought home to him and understood by him, before it can be found that he has accepted them.

Rest.2d Torts § 496B, cmt. c.[11]

¶ 22 In the instant case, it is stipulated that neither Beck–Hummel nor Hummel read the exculpatory language on the snow tubing ticket; that no Ski Shawnee employee verbally informed Hummel or Beck–Hummel that they were entering into a contractual agreement, the terms of which included the exculpatory language on the ticket, by paying for and accepting the ticket; and that neither Beck–Hummel nor Hummel had previously gone snow tubing at Ski Shawnee. Employing the standards in Section 496B, these facts do not suggest that the terms of the disclaimer were "brought home" to Beck–Hummel or understood by her.

■ ¶ 23 In response to Ski Shawnee's arguments that the disclaimer language on the ticket itself was so conspicuous that it,

alone, would put a purchaser on notice, as in *Nisbett, supra,* and *Missar, supra,* we look to the body of caselaw addressing the enforcement of warranty disclaimers under Pennsylvania's Uniform Commercial Code ("UCC"). *See* 13 Pa.C.S.A. § 2316.[12] Factors to be considered in determining whether a reasonable person should have noticed a warranty disclaimer include:

1) the disclaimer's placement in the document, 2) the size of the disclaimer's print, and 3) whether the disclaimer was highlighted by being printed in all capital letters or in a type style or color different from the remainder of the document. The reasonableness test accords with the primary purpose of the conspicuousness requirement, which is "to avoid fine print waiver of rights by the buyer[.]"

*Borden, Inc. v. Advent Ink Co.,* 701 A.2d 255, 259 (Pa.Super.1997) (citations omitted). Further, under the UCC, a "term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it," which is a decision for the court. 13 Pa. C.S.A. § 1201.[13]

¶ 24 The disclaimer language on the ticket was in a font size such that the

11. As an illustration, this section provides:
A, attending a theatre, checks his hat in B's check room. He is handed a ticket, on the back of which, in fine print, it is stated that B will not be liable for any loss or damage to the hat. Reasonably believing the ticket to be a mere receipt, A accepts it without reading it. B negligently loses the hat. A is not bound by the provision on the back of the ticket.
Rest.2d Torts § 496B, cmt. c, illus. 1.

12. We recognize that Article 2 of the UCC applies only to the sale of goods, 13 Pa.C.S.A. § 2102, while herein we are addressing the sale of services. Nevertheless, we find the UCC's warranty disclaimer provision in Article 2, and its interpreting caselaw, provides guidance in the instant case.

13. The UCC defines "conspicuous," in full, as follows:

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.
A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous.
Language in the body of a form is conspicuous if it is in larger or other contrasting type or color. But in a telegram any stated term is conspicuous.
Whether a term or clause is conspicuous or not is for decision by the court.
13 Pa.C.S.A. § 1201.

photocopy of the ticket attached to the Hummels' brief was just barely readable. The several references to "Ski Shawnee" and its logo were set forth in the largest text on the ticket. Although the ticket stated "● **PLEASE READ** ●" in bold, above the disclaimer, the font size of this language was similar to the phrases on the bottom of the ticket, "NON–TRANSFER-ABLE" and "NON–REFUNDABLE". We cannot conclude as a matter of law that the disclaimer language on the ticket itself was sufficiently conspicuous such that, without any further indications from the ski facility, a purchaser would be put on notice of its contents. *See Keblish v. Thomas Equip., Ltd.*, 427 Pa.Super. 93, 103–04, 628 A.2d 840, 846 (1993) ("Thus, we cannot conclude as a matter of law that the language was 'conspicuous' such that the implied warranty of fitness was properly disclaimed pursuant to 13 Pa.C.S.A. § 2316(b)"), *overruled on other grounds,* 541 Pa. 20, 660 A.2d 38 (1995).

¶ 25 Under the circumstances of this case, where it is undisputed that neither the purchaser nor user of the ticket read its language, and where the language of the ticket itself is not so conspicuous as to,

without more, put the user/purchaser on notice, we cannot conclude as a matter of law that the disclaimer is enforceable.[14] *See Passero, supra; Missar, supra.* Accordingly, we find that the trial court erred in granting summary judgment to Ski Shawnee on this basis, reverse the order entering that judgment, and remand for further proceedings.[15]

¶ 26 Order entering summary judgment **REVERSED.** Case **REMANDED.** Jurisdiction **RELINQUISHED.**

¶ 27 McEWEN, P.J.E. files a concurring statement.

CONCURRING STATEMENT BY McEWEN, P.J.E.:

¶ 1 Since the author of the majority Opinion has provided so perceptive and persuasive an expression of rationale, I hasten to join in that Opinion, and write separately only to express the view that the second question raised by appellant— whether the language of the release is effective to preclude appellants' claim of negligent design—warrants resolution,[16] since that question stands as an inexorable

14. In light of our determination that the parties' stipulations are limited in scope to Ski Shawnee's motion for summary judgment, *see supra* note 1, our conclusion is limited to that context.

15. Given our disposition, we do not address the Hummels' second issue on appeal.

16. In my view the following language of the release is broad enough to preclude the negligent design claim of appellants:

> Skiing, snowboarding and snow tubing, including the use of lifts, are dangerous sports with inherent and other risks. These risks include but are not limited to, variations in snow, steepness and terrain, trail side drop offs, ice and icy conditions, moguls, rocks, trees, and other forms of forest

growth or debris (above and below the surface), bare spots, lift towers, utility lines, poles and guy wires, snowmaking equipment and component parts, trail fences and control nets and the absence of such fences and nets, and other forms of natural or manmade obstacles on and/or off designated trails, as well as collisions with equipment, obstacles or other participants; trial conditions vary constantly because of weather changes and skier use. These are some of the risks of skiing, snowboarding and snow tubing. All of the inherent and other risks of skiing, snowboarding and snow tubing present the risk of serious and/or fatal injury.

Exhibit A to Stipulation. *See generally: Zimmer v. Mitchell and Ness,* 253 Pa.Super. 474, 385 A.2d 437 (1978), *affirmed per curiam,* 490 Pa. 428, 416 A.2d 1010 (1980).

corollary to whatever decision is rendered on the question of whether the terms of the release were effectively communicated to appellants.