J-S54042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MELINDA HINKAL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GAVIN PARDOE & GOLD'S GYM, INC., AND GOLD'S GYM INTERNATIONAL, INC. AND TRT HOLDINGS, INC. | |
| Appellee | No. 165 MDA 2014 |

Appeal from the Order Entered January 7, 2014
In the Court of Common Pleas of Union County
Civil Division at No(s): 12-0375

BEFORE:  LAZARUS, J., MUNDY, J., and STABILE, J.

MEMORANDUM BY MUNDY, J.:                    **FILED APRIL 24, 2015**

Appellant, Melinda Hinkal, appeals from the January 7, 2014 order granting the motion for summary judgment filed by Gavin Pardoe, Gold's Gym, Inc. (Gold's Gym), Gold's Gym International, and TRT Holdings, Inc. (collectively, Appellees).  After careful review, we reverse and remand.

In her second amended complaint, Appellant asserted claims of negligence against Pardoe, a personal trainer employed by Gold's Gym, and *respondeat superior* against each of the other Appellees.  The trial court set forth the facts and procedural history as follows.

> [Appellant] alleges she sustained a serious neck injury while using a piece of exercise equipment under Pardoe's direction.  [Appellant] alleges that she suffered a rupture of the C5 disc in her neck requiring two separate surgeries.  [Appellant] alleges that Pardoe's negligence included, *inter alia*, putting

too much weight on the piece of equipment that injured [Appellant] and by instructing [Appellant] to continue the workout without recognizing that [Appellant] had sustained a serious injury. [Appellant's] allegations of negligence against the remaining [Appellees] are based upon vicarious liability for Pardoe's negligence as well as the negligence of unidentified employees, agents and servants.

[Appellees] have filed a [m]otion for [s]ummary [j]udgment requesting that we dismiss all [of] [Appellant's] claims against all [Appellees] with prejudice. In support of their motion, [Appellees] aver that as a member of [Gold's Gym], [Appellant] signed a Guest Courtesy Card, a Membership Agreement and a Personal Training Agreement with Pardoe. [Appellees] assert that these documents contain legally valid "waiver of liability" provisions, which in turn, bar [Appellant's] claims against all [Appellees].

Trial Court Opinion, 1/7/14, at 1-2 (footnote omitted). On January 7, 2014, the trial court issued an order granting Appellees' motion for summary judgment and an accompanying opinion explaining its decision. On January 23, 2014, Appellant filed a timely notice of appeal.[1]

Appellant raises the following issues on appeal.

1. Whether the [g]uest [c]ard signed by the Appellant covering the six[-]day trial period had expired before the Appellant's injury occurred[?]

---

[1] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. In response to Appellant's Rule 1925(b) statement, the trial court refers this Court to its January 7, 2014 opinion.

2.     Whether the [w]aiver on the back page of the [m]embership [a]greement signed by the Appellant is valid and enforceable[?]

3.     Whether the [w]aiver encompasses [r]eckless [c]onduct?

Appellant's Brief at 4.[2]

Our standard of review of a grant of summary judgment is as follows.

As has been oft declared by [our Supreme] Court, "summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1221 ([Pa.] 2002); Pa. R.C.P. No. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 195 ([Pa.] 2007). In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment "where the right to such judgment is clear and free from all doubt." *Id.* On appellate review, then,

an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not

---

[2] We note that Appellant's application to file an amended brief was granted, and Appellant filed an amended brief on August 1, 2014. For ease of discussion, we refer to this as "Appellant's Brief" throughout. Appellees did not seek leave to supplement their first brief.

> defer to the determinations made by the lower tribunals.
>
> *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 902-03 ([Pa.] 2007) (internal citations omitted). To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record. *Id.* at 903.

*Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) (parallel citations omitted).

In the statement of questions involved section of her amended brief, Appellant first argues the guest card covering the six-day trial period had expired before Appellant's injury occurred. Appellant's Brief at 4. Initially, we note Appellant has waived this issue because she did not present argument in support of this issue in her brief.[3] *See id.* at 15-22; *Harvilla v. Delcamp*, 555 A.2d 763, 765 n.1 (Pa. 1989); *Harkins v. Calumet Realty Co.*, 614 A.2d 699, 703 (Pa. Super. 1992).

In her second issue, Appellant contends that the waiver provision on the reverse side of the membership agreement is not valid and enforceable. Appellant's Brief at 19-20. Specifically, Appellant argues that the waiver is

---

[3] If this issue was not waived, we would agree with Appellant that the guest card is not material to this dispute. Appellant received the guest card on June 20, 2010, and it expired at the end of the six-day trial period. Thereafter, Appellant signed the membership agreement on July 5, 2010. The provisions of the membership agreement were in effect on August 24, 2010, the date Appellant alleges she was injured due to Appellees' negligence. The trial court based its ruling on those provisions. Therefore, the membership agreement is the contract governing this dispute.

unenforceable because it is inconspicuous and is insufficient to provide notice of its contents and legal significance. *Id.* For the following reasons, we agree.

The Gold's Gym membership agreement is printed on a single, two-sided page in a carbon copy packet. Appellees' Motion for Summary Judgment, 8/19/13, at Exhibit C. The only signature line is located at the bottom of the front side. *Id.* at 1.[4] The first line in the paragraph above the signature line provides, "[d]o not sign this [a]greement until you have read both sides. The terms on each side of this form are a part of this [a]greement." *Id.* This instruction is not set off from the rest of the paragraph and is not in bold typeface, capital letters, or larger font, even though other terms, such as the "buyer's right to cancel," appear in bold and capital letters. *Id.*

On the reverse side of the agreement are 13 additional terms printed in light gray ink on pink carbon paper. *Id.* at 2. All of these terms are single-spaced and printed in the same font size. *Id.* The "Waiver of Liability; Assumption of Risk" clause at issue in this case is the 12th term, located approximately three-quarters of the way down the page, and is not

---

[4] The membership agreement is not paginated. For ease of reference, we have numbered the front as page 1 and the reverse as page 2.

differentiated in any manner from the surrounding paragraphs. *Id.* It reads

as follows.

**WAIVER OF LIABILITY; ASSUMPTION OF RISK:** Member acknowledges that the use of Gold's Gym's facilities, equipment, services and programs involves an inherent risk of personal injury to Member and Member's guests and invitees. Member voluntarily agrees to assume all risks of personal injury to Member, Member's spouse, children, unborn children, other family members, guests of invitees and waives any and all claims or actions that Member may have against Gold's Gym, any of its subsidiaries or other affiliates and any of their respective officers, directors, employees, agents, successors and assigns for any such personal injury (and no such person shall be liable for to [sic] Member, Member's spouse, children, unborn children, other family members, guests or invitees for any such personal injury), including, without limitation (i) injuries arising from use of any exercise equipment, machines and tanning booths, (ii) injuries arising from participation in supervised or unsupervised activities and programs in exercise rooms, running tracts, swimming pools, hot tubs, courts or other areas of any Gold's Gym, (iii) injuries or medical disorders resulting from exercising at any Gold's Gym, including heart attacks, strokes, heat stress, sprains, broken bones and torn or damaged muscles, ligaments or tendons and (iv) accidental injuries within any Gold's Gym facilities, including locker rooms, steam room, whirlpools, hot tubs, spas, saunas[,] showers and dressing rooms. Member acknowledges that (x) Gold's Gym does not manufacture any of the fitness or other equipment at its facilities and (y) Gold's Gym does not manufacture any vitamins, food products, sports drinks, nutritional supplements or other products sold at its facilities; accordingly, neither Gold's Gym, any of its subsidiaries or other affiliates nor any of their respective officers, directors, employees, agents, successors or assigns shall be held liable for any such defective equipment or products. Member shall indemnify each of Gold's Gym, its subsidiaries

and other affiliates and each of their respective officers, directors, employees, agents, successors and assigns (and "Indemnified Party") and save and hold each of them harmless against and pay on behalf of or reimburse any such Indemnified Party as and when incurred for any Losses which such Indemnified Party may suffer, sustain or become subject to, as a result of, in connection with, relating or incidental to or by virtue of any claim that is the subject of the waiver set forth above. The provisions of this paragraph shall survive the termination of this Agreement and Member's membership.

*Id.* The reverse side of the agreement does not have any space for a signature or for initials where a signatory may acknowledge the additional terms. *Id.* Neither does the front side of the agreement require separate confirmation that the signatory has read and accepted the additional terms on the reverse side. *Id.* at 1. Furthermore, it is undisputed that Appellant did not read the waiver of liability language on the reverse side of the agreement, and that no employee of Gold's Gym verbally informed her that the terms of the agreement included an exculpatory clause. Appellant's Brief at 19; Appellees' Brief at 20.

In *Beck-Hummel v. Ski Shawnee, Inc.*, 902 A.2d 1266 (Pa. Super. 2006), this Court recognized that an unsigned, unread exculpatory clause may be enforceable as a matter of law if the clause is sufficiently conspicuous such that a reasonable person would have been put on notice of its contents. *Beck-Hummel*, *supra* at 1274-1275. In *Beck-Hummel*, Suzanne Beck-Hummel was injured while snow tubing. *Id.* at 1267. Her snow tubing ticket contained an exculpatory clause. *Id.* Beck-Hummel and

her husband filed an action for negligence and loss of consortium. *Id.* at 1268. The parties stipulated that Beck-Hummel and her husband neither signed an agreement nor read the exculpatory language on the snow-tubing ticket. *Id.* at 1274. They further stipulated that no employee of the snow-tubing facility verbally informed either of them "that they were entering into a contractual agreement, the terms of which included the exculpatory language on the ticket, by paying for and accepting the ticket." *Id.*

This Court in *Beck-Hummel* concluded that the unsigned, unread exculpatory clause would nevertheless be enforceable if the exculpatory language was sufficiently conspicuous. *Id.* In other words, the exculpatory clause would be enforceable if a reasonable person should have noticed it. *Id.* In determining whether a reasonable person should have noticed an exculpatory clause, a court should analyze the following factors.

> 1) The [exculpatory clause's] placement in the document, 2) the size of the [clause's] print, and 3) whether the [clause] was highlighted by being printed in all capital letters or in a type style or color different from the remainder of the document.

*Id.* The *Beck-Hummel* Court applied this test and ultimately determined that the language printed on the tubing ticket was not sufficiently conspicuous and was therefore unenforceable. In reaching this conclusion, the *Beck-Hummel* Court stated the following.

> The disclaimer language on the ticket was in a font size such that [it] was barely readable. The several references to [the snow tubing company] and its logo were set forth in the largest text on the ticket. Although the ticket stated "● **PLEASE READ** ●" in

> bold, above the disclaimer, the font size of this language was similar to the phrases on the bottom of the ticket, "NON-TRANSFERABLE" and "NON-REFUNDABLE".

*Id.* at 1274-1275.

Applying the foregoing principles from ***Beck-Hummel*** to this case, we conclude as a matter of law that the exculpatory clause in the Gold's Gym membership agreement is unenforceable because it is not sufficiently conspicuous. ***See*** Appellees' Motion for Summary Judgment, 8/19/13, at Exhibit C. As noted above, the exculpatory clause is printed on the reverse side of the one-page document. The exculpatory clause is not in immediate proximity to the signature line, as the signature line is on the front side of the document. Additionally, the font size of the exculpatory clause is not distinct from the other 12 terms on the reverse side, nor is the font size of the sentence advising Appellant to read both sides of the agreement distinct from the surrounding text. This is in contrast, for example, to the font in the paragraph explaining the "Buyers Right to Cancel" on the front side.[5] Rather, the exculpatory clause is printed in light gray ink on pink carbon paper and is difficult to read. Further, it is undisputed that Appellant did not

---

[5] We note the conspicuous nature of the Buyer's Right to Cancel clause pursuant to 73 P.S. § 201-7, which requires, in pertinent part, the clause to appear "in immediate proximity to the space reserved in the contract for the signature of the buyer or on the front page of the receipt if a contract is not used and in bold face type of a minimum size of ten points[.]"

read the language of the membership agreement, and the language of the agreement itself is not so conspicuous as to, without more, put the user on notice of the exculpatory clause. Notably, the sentence advising Appellant to read both sides of the agreement does not contain a description of the additional terms or an indication of their potential significance. Therefore, we conclude the exculpatory clause in this case is unenforceable as a matter of law. *Beck-Hummel*, *supra* at 1274-1275.

The trial court found that the Gold's Gym membership agreement is valid and enforceable as a written, signed contract, relying on *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174 (Pa. 2010). Trial Court Opinion, 1/7/14, at 4-10. However, the agreement in this case is distinguishable from the contract at issue in *Chepkevich*. In *Chepkevich*, the appellee claimed she was injured on the ski lift at Hidden Valley Resort as a result of the negligence of the ski lift operator. *Chepkevich*, *supra* at 1175-1176. Our Supreme Court concluded that the ski resort was entitled to summary judgment based on the terms of the release from liability included in the parties' written and signed contract.[6] *Id.* at 1188. After determining that this exculpatory clause was facially valid, the Court

_____

[6] The Court first held that the defendants were entitled to summary judgment under the Skiers Responsibility Act, which preserved the doctrine of assumption of the risk as it applies to downhill skiing injuries and damages. *Id.* at 1188; 42 Pa.C.S.A. § 7102(c).

distinguished the release involved in **Chepkevich** from **Beck-Hummel** as follows.

> [T]he [r]elease in this case was a full page titled "RELEASE FROM LIABILITY" in capital letters in large font at the top. The actual language releasing [the ski resort] from liability regardless of its own negligence was written in the same font as the rest of the [r]elease, and [the appellee] signed that [r]elease. … Whether or not [the appellee] availed herself of the opportunity to read the [r]elease she signed, we cannot agree that a full-page, detailed agreement, written in normal font and titled "RELEASE FROM LIABILITY" constitutes an insufficient effort on the part of [the ski resort] to inform [the appellee] of the fact that, by signing and purchasing a lift ticket, she was giving up any right she might have to sue for damages arising from injuries caused even by negligence.

**Id.** at 1192.

The instant case is not analogous to **Chepkevich** because, unlike the release in **Chepkevich**, the exculpatory clause in this case was not on a separate page, was not clearly titled, and was not signed separately.[7] Instead, it was one of 13 terms on the reverse side of the membership agreement and did not require a separate acknowledgment. Given that Appellees in this case took no other steps to alert Appellant that she was

_____

[7] Similarly, the waiver in the agreement in the case relied on by Appellees is conspicuous and, therefore, not analogous to the present matter. **See Seaton v. East Windsor Speedway, Inc.**, 582 A.2d 1380, 1383 (Pa. Super. 1990) (stating "the bold-typed letters 'Release and Waiver of Liability and Indemnity Agreement' at the top of the sheet quickly notify the signer that the paper is, in fact, a release[]").

- 11 -

waiving her right to initiate personal injury actions against Gold's Gym by signing the membership agreement, we cannot conclude as a matter of law that the exculpatory clause represents the intent of Appellant to waive said right. Therefore, the exculpatory clause is unenforceable because it was not read and was not sufficiently conspicuous. **Beck-Hummel**, **supra** at 1274-1275.

Accordingly, we conclude that the trial court erred in granting summary judgment. Therefore, we reverse the January 7, 2014 order granting summary judgment and remand for further proceedings consistent with this memorandum.[8]

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Lazarus joins the memorandum.

Judge Stabile files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/24/2015

---

[8] Given our disposition, we do not reach Appellant's third issue of whether the waiver in the membership agreement encompasses reckless conduct.

- 12 -